## Ter-Hoven v. Kerns.

1. Ground-rent is payable out of proceeds of sheriff's sale, under a lien acquired before the rent became due, but without interest.
2. Judgment to cover future advances is valid, but if the creditor gives a statement of the amount then due, to enable the defendant to borrow from another, he is estopped claiming beyond that amount.
3. It seems, future advances will not be preferred to liens attaching before such advance is made.   Per KENNEDY, J.   If there be an obligation to make the advance, Query.

*Dec.* 13.—EXCEPTIONS to auditor's report on sheriff's sale of defendant's property.

In 1839, Kerns confessed a judgment to the bank of N. L. for $10,000, conditioned to pay all notes now, or to be, drawn or endorsed by Kerns, and discounted by the bank.   This judgment was revived on 4th May, 1844.

Ter-Hoven claimed the fund under a judgment confessed October, 1842, and showed a statement by the cashier of the bank, in April, 1842, that Kerns "was indebted to the bank $845, amount of lien on a judgment held by it," and proved it was obtained at the time of the treaty with him for a loan on bond and mortgage, on which bond the judgment was entered, which statement was given Kerns to enable him to raise money.

The conditions of the judgment were not otherwise altered, and the bank continued discounting until May, 1844, without actual notice of Ter-Hoven's claim; when Buhler, at request of, and as a favour to Kerns, paid the debt due the bank, amounting to $2086 71, and took an assignment of the judgment.   The bank, in October, 1842, gave a release of the property mortgaged to Ter-Hoven, reserving their lien as to all others, the debt being then $457 65, $400 having been paid the bank.   Williams claimed four years' ground-rent with interest; the auditor awarded the fund to Buhler.

The questions were, 1, Was the judgment good for future advances against the intervening judgment?   2. Whether the certificate did not estop the bank and its assignee claiming beyond that amount.   3. As to the ground-rent.

*Brightly* and *Price*, for Ter-Hoven.—1st point, Garbro *v.* Henry, 6 Watts, 59; Brinkerhoff *v.* Marvin, 5 Johns. C. Rep. 327; James *v.* Johnson, Id. 429; Erwin *v.* Taff, 17 Serg. & Rawle, 422; Patterson *v.* Griswold, 4 Conn. Rep. 161 : 5 Rawle, 51, 131.   The assignee is

in no better plight than the assignor.   Crantz v. Brown, 1 Penna. 260.
Second point, 4 Pet. 1; 1 Johns. Cas. 174; 4 Bin. 231, 314; 8 Pick.
386; 5 Day, 88.   There was no stipulation for future advances, and
that distinguishes it from Lyle v. Ducomb, 5 Bin. 585.

*Kennedy*, for Buhler.—There being no money lent between the cer-
tificate and release, there is no intervening equity.   The certificate is
but a statement.   At the time of the loan there was notice of the
nature of the bank's judgment.   5 Bin. 585 ; 4 Kent, Com. 175.

*N. R. Potts*, for Williams.—As to the ground-rent, Bantleon v.
Smith, 2 Bin. 146 ; Sands v. Smith, 3 Watts & Serg. 1.

*Jan.* 20.   KENNEDY, J.—The first exception is, that the auditor re-
fused to allow a claim of $152 60, for and on account of ground-rents,
falling due from the estate sold, in the years 1841, 1842, 1843, and
1844.    In this, we think that the auditor erred, so far as the $152 60
were composed of principal, but right so far as it consisted of interest
calculated upon the principal, from the times, respectively, at which
it became payable.   That the owner of the rent is entitled to have the
principal of the rent, out of the moneys arising from the sheriff's sale,
was settled in the case of Bantleon v. Smith, 2 Bin. 146 ; but not to
interest thereon.   This rule has been uniformly observed and adhered
to ever since.   We, therefore, consider the owner of the rent entitled
to receive the principal of it, coming to him, in this case, without inte-
rest, the amount of which is referred to the prothonotary of the court to
be ascertained by him.   [His honour then stated the material facts of
the case.]

With respect to the validity of the judgment taken by the bank, of
Kerns, there can be no question.   A judgment or mortgage taken to
secure the payment of an existing debt, and debts or liabilities to be
created in future, has been held to be good and valid by numerous
decisions.   Gordon v. Graham, 7 Vin. Abr. 52, E. pl. 3; Lyle v.
Ducomb, 5 Bin. 585, 4 Kent Com. 175, and the cases there referred
to.   It may also be regarded as settled, when the prior encumbrancer, in
such case, especially if his encumbrance be a judgment, makes future
advancements upon the faith of his encumbrance, with actual notice
of a new intervening encumbrance, that he will not be preferred for
such subsequent advancements, to the intervening encumbrance ; the
latter will be entitled to a preference.   But suppose he makes such ad-
vancement without any actual knowledge whatever, on his part, of the
existence of the intervening encumbrance ; shall he be postponed or
not, the same as if he had had actual notice ?   This question, I think,

has not been definitively settled. And I am inclined to believe that there may be a diversity of opinion in regard to it. In Gordon *v.* Graham, 7 Vin. Abr. 52–3, E. pl. 3, where the prior encumbrancer took a mortgage to secure the payment of money already lent, as also such other sums as should thereafter be lent or advanced, and the second mortgagee took his mortgage with notice of the first; and the first mortgagee after this, with notice of the second mortgage, lent a further sum of money to the mortgagor, Cowper, C., was of the opinion that the second mortgagee could not redeem without paying all that was due to the first mortgagee. In Shirris *v.* Craig, 9 Cranch, 34, Marshall, Chief Justice, gives it as the opinion of the court, that a mortgage executed to secure the payment of an existing debt, and for debts subsequently contracted, upon its faith, either by advancements made or liabilities incurred prior to the receipt of actual notice of the subsequent title of the defendants, was good, and entitled to a preference; see pages 50, 51. So Chancellor Kent, 4 Commentaries, 175, after stating that a mortgage or judgment may be taken and held as a security for subsequent advances and responsibilities to the extent of it, when this is a constituent part of the agreement, says, the future advances will be covered by the lien, in preference to the claim under a junior intervening encumbrance with notice of the agreement. Indeed, Chancellor Kent seems to think the prior encumbrancer entitled to a preference, if the instrument under which he claims provides for his making future advancements, whether he has notice or not, at the time of the junior intervening encumbrance, and that the junior encumbrancer will only be preferred where he has no notice or means of knowing the agreement under which such future advancements have been made. Yet in Brinkerhoff *v.* Marvin, 5 Johns. Ch. Rep. 326, after referring to several cases, where it had been held, or laid down, that a mortgage or judgment, taken as a security for future advances, beyond the amount actually due, was good and valid, he observes, the limitation to this doctrine " I should think would be, that when a subsequent judgment or mortgage intervened, further advances, *after that period*, would not be covered." Thus leaving the question to be decided, without regard to notice, according to the fact whether the future advances were made prior or subsequently to the junior encumbrance coming into existence. To this, I apprehend, there can be no just or equitable objection made, where every encumbrance upon real estate, before it can become such, must be placed on record, or registered, or filed in some public office, where its being and extent may be fully ascertained by any one whose interest it may be to know it. Such is the case as to encumbrances created upon real estate in Pennsylvania; no such encumbrance can exist without being

placed on record, or registered, or filed in some public office appointed by law for the purpose, where any one may be fully apprized of its existence or non-existence by calling and making the necessary inquiry. But it is said, a prior encumbrancer is not bound to look to the obtainment or entry of subsequent encumbrances; and generally this is true, and perhaps universally, where the encumbrance is given to secure the payment of a debt in being, the amount of which is fixed and mentioned, or as an indemnity against future liabilities, which may and shall arise from having become bail or surety for the encumbrancer, in some particular respect mentioned, and referred to in the agreement. But where the encumbrance is given for a debt, of a certain amount already owing, and for future advances or responsibilities which cannot be made or incurred without the future will and consent of the party taking such encumbrance; there is no good reason why he, before he advances or accepts of any new responsibility in future, should not examine the various offices for junior and intervening encumbrances, in the same manner as if he were about to accept of a new and independent liability from the party, having no reference whatever to any prior encumbrance. Every future advancement or responsibility created, is, in reality, a new debt, and such responsibility is created by a new contract, having a reference merely to the prior encumbrance, for the purpose of making it a lien upon the debtor's real estate; so that with respect to those who have acquired liens upon the real estate of the debtor, in the mean time, there is no ground or just reason whatever, why such future advances or responsibilities should not be looked on and considered as having no connection with the prior encumbrance under which they may have been made. In the abstract, there is quite as much reason why the prior encumbrancer should look to the then existing state of the encumbrances upon the party's real estate, or otherwise act at his peril, and take the risk upon himself, as if he were about to make an advancement to, or create a liability with, the party for the first time. And if we look at the thing in practice, I think it will appear not only more practicable, but much more reasonable and just, that the prior encumbrancer should be regarded as bound to know the state of the encumbrances at the time, against the real estate of the person to whom he makes future advances, than that every junior or intervening encumbrancer shall be bound to run after, and give him personal notice, or notice in fact of such subsequent encumbrance having been obtained, together with the amount of it. In some instances it may be almost, if not wholly impracticable, for the junior encumbrancer to do so, as where the prior encumbrancer may be a non-resident of the state, and residing abroad in parts unknown. To

require such notice to be given to the prior encumbrancer, in such cases, by the junior encumbrancer, would most likely put it out of the power of the party, whose estate is so encumbered, to borrow or obtain money upon it, and his ruin be produced in consequence of it. But it is in all cases practicable for the prior encumbrancer, without much trouble or inconvenience, to ascertain, by inquiry and search, at the several offices where encumbrances are to be found, if any junior exist; and to ascertain the extent of them. He is under no obligation to make future advances, and most likely, therefore, will never do so, unless he can make profit by it, and throw the expense attending the same upon the party to whom such advances are made. Taking every thing, then, into consideration, there appears to be no good or just reason why he should be regarded otherwise, in making future advances, than if he were making advances to the party for the first time.

> This court, therefore, order and decree that the principal of the ground-rent be first paid to the owner thereof, out of the $1016 33 remaining, after paying taxes and the charges of auditing, (the amount of the principal of the ground-rent to be ascertained by the prothonotary of this court;) next that $457 71 be paid to the Bank of the Northern Liberties, for the use of Tobias Beehler, with interest thereon, from the 25th of October, 1842, to the date of the sheriff's sale. And, lastly, that the residue of the said $1016 33 cents be paid to Anthoon Ter-Hoven.

SERGEANT, J., dissented.