## Estate of George Hartzell, deceased.  Appeal of John G. Ruoff.

*Will—Devise—Charge on land.*

Testator devised various tracts of land to his five children and directed that certain sums designated should remain a lien on the land devised, the interest thereon to be paid to his wife; and at her death, " the said sums of money made chargeable on the real estate devised to my children . . . shall be added together, and this sum, less the costs, etc., shall be divided into five equal parts, and one equal part paid to each of my five children above named or their heirs." One of the sons having accepted his devise assigned his interest, for a valuable consideration, in the sum that would be due him at the death of his mother. Subsequently a judgment was entered against him, and the land devised to him was sold under an execution. At the sale public notice was given of the charge upon the land. Two years after the sale the widow of testator died. The purchaser at the sheriff's sale refused to pay to the legatees the amount charged upon the land. *Held,* (1) that the sum which the testator directed should remain as a lien was a charge upon the land; (2) that the sheriff's sale did not discharge the lien; (3) that the son's share in the fund to be created at the death of the widow did not merge and become extinguished in the

fee simple title which vested in him under the devise; (4) that the assignment by the son of his share in the fund to be created at the death of the widow passed a good title to his assignee; (5) that the sheriff's vendee was bound to pay the sum charged upon the son's land.

Argued Oct. 24, 1898.  Appeal, No. 116, Oct. T., 1898, by John G. Ruoff, from decree of O. C. Westmoreland Co., Nov. T., 1895, No. 32, overruling exceptions to auditor's report.  Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Exceptions to auditor's report.

The auditor, John B. Head, Esq., reported as follows:

This proceeding, as it comes before the auditor, is a petition to the orphans' court, under the provisions of the Act of February 24, 1834, sec. 59, Purdon's Digest (12th ed.), 620, pl. 266.  The petitioners are all of the legatees under the will of George Hartzell, deceased, and the executor of said will.  The respondent is John G. Ruoff, present owner of a tract of land devised by said George Hartzell in his will, and charged, as petitioners allege, with the payment of a sum of money bequeathed to them by said will.  The powers and duties of the orphans' court in such a case, after all the parties in interest have been brought into court, are defined by the following language taken from the act of assembly above referred to, viz: "Whereupon such court may proceed according to equity, to make such decree or order touching the payment of the legacy, out of such real estate, as may be requisite and just."  All the material facts appear from the records offered in evidence by counsel for the parties.  In accordance with the direction of the court, the auditor herewith submits findings of fact and of law, together with an opinion setting forth the reasons for the conclusions reached, and the form of a decree to be entered.

### FINDINGS OF FACT.

1. George Hartzell died November 11, 1886, leaving to survive him a widow, Hannah Hartzell, and five children, viz: George M. Hartzell, Lewis H. Hartzell, Susanna E. Boyer, Lydia A. Hartzell, and Amanda Naley.

VOL. CLXXXVIII—25

2. By his last will, duly admitted to probate, the said George Hartzell provides, inter alia, as follows, viz:

"I give devise and bequeath to my son, Lewis H. Hartzell, his heirs and assigns, the 'Keefer farm,' in Penn township, said county, containing about 128 acres, at seven thousand six hundred and eighty ($7,680) dollars.

     \*     \*     \*     \*     \*     \*     \*     \*

"For the purpose of making an equal distribution of my estate, except as hereinbefore directed, among my five (5) children, to-wit: George M., Lewis H., Susanna E., Amanda and Lydia Ann, I appraise and value the 'Jack farm' devised to George M., at fourteen thousand two hundred and eighty ($14,280) dollars, four thousand seven hundred and sixty ($4,760) dollars of this sum to remain a lien on the land so devised, and the interest thereon to be paid annually to my beloved wife, as hereinbefore directed. The 'Keefer farm' devised to Lewis H., at seven thousand six hundred and eighty ($7,680) dollars, one-third of which, viz: two thousand five hundred and sixty of which is to remain a lien on the lands so devised, and the interest thereon to be paid annually to my wife, as hereinbefore directed. The twenty-nine acres devised to Susan E., at two thousand one hundred and seventy-five ($2,175) dollars, one-third of which, viz: seven hundred twenty-five ($725) dollars, is to remain a lien on the same, and the interest thereon to be paid to my wife as hereinbefore directed. The property in Mt. Pleasant borough, aforesaid, devised to Lydia Ann, at one thousand three hundred ($1,300) dollars, one-third of which, viz: four hundred and thirty-three and 33–100 ($433.33) dollars, is to remain a lien on the same and the interest thereon to be paid annually to my wife, as hereinbefore directed. And the home property and the acre and a half pasture lot, devised to Amanda, I value and appraise at five thousand and five hundred ($5,500) dollars.

     \*     \*     \*     \*     \*     \*     \*     \*

"At the death of my said wife, the said sums of money made chargeable on the real estate devised to my children and the property devised to Amanda, shall be added together and this sum, less the costs, etc., shall be divided into five equal parts, and one equal part paid to each of my five children above named, or their heirs."

Of this will the testator appointed his son George M. Hartzell executor, and letters testamentary were issued to him.

3. Lewis H. Hartzell accepted the devise in his favor and went into possession, and appears to have accounted for all of his purchase money, except the sum of $2,560 payable on the death of the widow.

4. On October 7, 1892, John G. Ruoff obtained a judgment against Lewis H. Hartzell for $3,360. On September 22, 1893, Lewis H. Hartzell assigned to one John Long all his estate, right, title, etc., by and under the will of his father that would be due and owing to him at the death of his mother, Hannah Hartzell. This assignment was in writing, was for a valuable consideration, and on the day it was made, it was recorded in the recorder's office.

On September 28, judgment was entered in favor of J. W. Fisher against Lewis Hartzell for $200.

5. Upon the two judgments above recited writs of fi. fa. were issued; the land devised to Lewis H. Hartzell was taken in execution and sold by the sheriff on November 10, 1893, to John G. Ruoff for $2,505. This sale was regularly confirmed by the court, and a deed was duly acknowledged and delivered to the purchaser.

6. At the sheriff's sale public notice was given to all parties that the land offered for sale was charged with the legacy of $2,560 dollars under the will of George Hartzell; that only the arrears of interest accrued thereon would be discharged by the sale and payable out of the proceeds, etc., and warning bidders to act accordingly. The sheriff's schedule of distribution shows that $1,262.49 was applied to the payment of arrears due the widow at time of sale; $47.85 to costs of sale, and the balance of the purchase money $1,194.66, was allowed to John G. Ruoff, the purchaser, on account of his judgment.

7. Hannah Hartzell, widow of testator, died on March 24, 1895. Since her death John G. Ruoff has refused to pay to the legatees' petitioners the sum of $2,560 or any part thereof, and this proceeding has been instituted to enforce payment of that amount with interest from the date of the death of the widow. On his own petition John Long, assignee of the share of Lewis H. Hartzell, has been permitted by the court to intervene and become one of the petitioners.

## CONCLUSIONS OF LAW.

1. The devise to Lewis H. Hartzell and his acceptance thereof vested in him the title to the "Keefer farm," charged with a lien to secure the payment of $2,560 dollars and interest thereon, to the persons and at the times provided in the will.

2. Under the will, Lewis H. Hartzell, on the death of the widow, was entitled to receive, not any fixed share of the $2,560 charged on his own land, but a share in a fund to be made up of this and several like charges, from which fund was first to be deducted the costs and expenses of collection, distribution, etc.

3. Under these circumstances this future but undetermined interest of Lewis H. Hartzell in the fund to be created as provided in the will did not merge and become extinguished in the fee simple title to the land which vested in him under the devise.

4. The lien created by the will being of a fixed and continuing nature, a sheriff's sale of the land during the life of the widow did not discharge the lien, but the purchaser took the land charged with the payment of $2,560, and the interest thereon, in addition to the amount of his bid.

5. The purchaser at sheriff's sale did not buy the interest or share of Lewis H. Hartzell in the fund to be gathered after the death of the widow, but only his interest in and title to the land itself.

6. John G. Ruoff, the respondent, has no defense at law or in equity to the payment of the sum of $2,560 with interest thereon, from March 24, 1895, the date of the widow's death, and the petitioners are entitled to a decree in their favor for that amount.

If the respondent had any doubt as to the persons he should pay, the first section of the Act of May 1, 1861, Purdon's Digest (12th ed.), 621, pl. 269, furnishes complete protection against such dangers and enables a person in his situation to pay the legacy and discharge his land with promptness and security.

That the land passed by the devise charged with the payment of the valuation money fixed by the testator, is too plain for argument: Hart v. Homiller, 23 Pa. 39 ; Gilbert's Appeal, 85 Pa. 347.

The devisee having taken the title bound by a lien, let us consider the further provision of the will providing for the creation of a fund after the death of the widow, and giving to each of his five children, including Lewis, an equal share in the net proceeds of that fund. Can it be said that the lien thus fixed on the land of Lewis became merged in whole or in part in the title which vested in Lewis, because he, as a legatee, was to receive a share of the fund of which the money charged on his own land was a constituent part? That the lien as a whole could not merge seems clear, because the widow and the other legatees were interested in it, and their interests could not be destroyed by mere operation of law. Equity does not favor mergers; and in law mergers are said to be odious. Equity will not permit the rights of creditors, legatees, etc., to be defeated by mere act of law, without any act done by them: Penington v. Coats, 6 Wharton, 282.

So if there be a beneficial interest in any other person, there will be no merger: Dougherty v. Jack, 5 Watts, 456.

Could any part of the lien merge on the theory that it represented the share of Lewis in the fund? If so, what part or to what extent? Let it be kept in mind that Lewis was not given a portion of the money charged on his own land, so that it could be said he owed himself a fixed and determinate sum. On the contrary, he was given a share in a fund the exact amount of which could not be determined when his rights vested, and cannot be determined now. True, if each devisee paid in the amount charged in the will, the gross amount of the fund could be known. Even then the net amount of the fund could not be ascertained. But how could it be told until payments were actually made that the devisees would pay the amount charged? And in case of their failure what certainty is there that the lands charged would sell for enough to realize the amounts charged? Although the original petition filed by the executor averred that the remaining devisees had paid into his hands the amounts charged on their devises, when the court decided that he had no standing to·receive the money and release the land the money may have been withdrawn from his hands; or it may be withdrawn at the pleasure of the devisees, as the executor is but their agent in this respect.

It seems clear that the interest of Lewis in this lien was so

impossible of ascertainment that the doctrine of merger could not apply. Moreover it was not to the interest of the devisee that the two should merge. His interest in the fund was personal property. It could not be bound by the lien of a judgment against him. It would not pass by a sheriff's sale of his land. He could sell and assign it at pleasure like any other chose in action. Under such circumstances there is a presumption that no merger took place. As a merger is for the benefit of him in whom the two interests unite, it will never take place when it is against his interest, or when it is most for his advantage to keep the charge alive: Wallace v. Blair, 1 Grant, 81; Moore v. Harrisburg Bank, 8 Watts, 149; Dougherty v. Jack, supra; Bryar's Appeal, 111 Pa. 81. There is also some evidence, the only evidence on either side of this question, that as early as 1893, Lewis Hartzell did not consider there was any merger, because on September 22 of that year, he specifically assigned his interest in the fund to John Long. Finally the case of Hart v. Homiller, Ex'r, supra, seems to expressly decide this question and about every other important question in this case : "If after this (a sheriff's sale of the land of the devisee charged with the payment of a legacy) there should be funds in the hands of the executor of the estate, and the said devisee's share thereof should be sufficient to pay the charge on the land thus devised, this would not of itself operate as an extinguishment of the charge; for that would be the application of the devisee's funds in order to discharge the duty of the sheriff's vendee." As this case is so much like the one in hand, and rules nearly every phase of it, it may be well to recall that it was carefully reviewed by MITCHELL, J., in delivering the opinion of the Supreme Court when the present case was recently before that body: Hartzell's Estate, 178 Pa. 286. While they overrule the case cited, in so far as it decides that an executor may maintain a proceeding in the orphans' court to recover a legacy charged on land, the learned justice says: "These cases are all subsequent to Hart v. Homiller, and while not disturbing the principle of that decision, must be accepted as establishing a different practice."

It would therefore appear that on September 22, 1893, Lewis Hartzell was the owner of a tract of land bound by the liens of the charge created by the will, and the judgment of respondent.

He was also the owner of a share in a fund to be made up after his mother's death in the manner provided by the will. This was personal property, and was not bound by any attachment or other legal impediment to its assignment. On the date named he assigned this share for a valuable consideration to John Long, and there is no reason apparent in the evidence before the auditor why this assignment did not pass a good title to the assignee. The subsequent sale by the sheriff did not convey anything but the interest of Hartzell in the land. It did not disturb the assignment to Long. The purchaser had express notice of the fact that the lien would be preserved, and that the land would cost him the amount of the lien in addition to his bid. Presumably by reason of this, the respondent bought for $2,505, land devised to Lewis Hartzell by his father at $7,680.

Under these circumstances the law will not permit the purchaser to hold the land except on payment of the legacy. And certainly in equity he has no standing to ask that his land should be discharged from the duty of paying the legacy. Upon all the evidence the auditor feels clear that the respondent has no defense at law or in equity against this proceeding, and accordingly a decree directing the payment of $2,560 with interest from the date of the death of the widow and costs since the filing of the present petition.

Exceptions to the auditor's report were dismissed by the court.

*Error assigned* was in dismissing exceptions to auditor's report.

*W. A. Griffith*, with him *Vin E. Williams* and *A. M. Sloan*, for appellant.—The rule is incontestably established that a judicial sale divests all liens which in their nature are capable of being ascertained and which are not saved by statute : Barnet v. Washebaugh, 16 S. & R. 413; Ashmead v. McArthur, 67 Pa. 329; Woods's App., 20 W. N. C. 253.

If this land is bound as contended, it must be by reason of the express language used by the testator, or by necessary implication of law arising from the language used. In consideration of the language used it is clear the testator did not charge the land (except for the widow's benefit). He could easily

have done so by express words: Hackadorn's App., 11 Pa. 88;
2 Trickett on Liens, sec. 541; Solliday v. Gruver, 7 Pa. 452.

John G. Ruoff, the appellant, in respect of these lands, stands
in the shoes of Lewis H. Hartzell, the original devisee, and any
right or interest therein which the devisee had passed by the
sheriff's deed to the appellant: Reigle v. Seiger, 2 P. & W. 340.

Even when partition is unequal the charge on the land, for
the purpose of securing the widow her thirds, has not been un-
derstood as securing the taker's share of the revised third of
the valuation, for he is regarded as having taken it: Williams
v. White, 35 Pa. 514; Duey v. Clemens, 1 Pa. 118; Stecker
Shimer, 5 Wh. 452; Weiler's Est., 169 Pa. 67.

*George S. Rumbaugh*, for appellee, was not heard, but in his
printed brief said: All that is necessary is to give to the pur-
chaser such notice as is sufficient to put him on an inquiry
leading to the whole truth. It is not necessary that the notice
should contain full, entire and circumstantial information of
every fact which it may be material for the purchaser to know:
Barnes v. McClinton, 3 Penrose & Watts, 67.

Under the law the $2,560, with interest, is considered as un-
paid purchase money, and remains a lien upon the land: Hart
v. Homiller, 23 Pa. 39; Gilbert's App., 85 Pa. 347; Baker's
App., 59 Pa. 313; Knecht's App., 71 Pa. 333; Fishburn's App.,
10 W. N. C. 489.

The said legacy charged upon the land, it follows that it
would not be divested by a sheriff's sale, for the reason that it
was not due and payable until the death of the widow, which
occurred some two years later: Woods's App., 20 W. N. C. 253.

The lien as a whole could not merge, for the reason that the
widow and the other legatees were interested in it, and their
interest could not be destroyed by mere operation of law: Pen-
nington v. Coats, 6 Wharton, 282; Dougherty v. Jack, 5 Watts,
456; Mawhinney v. Shallcross, 10 Pa. C. C. R. 102; Moore v.
Bank, 8 Watts, 138; Cook v. Brightly, 46 Pa. 439; Wilson v.
Gibbs, 28 Pa. 151; Bryar's App., 111 Pa. 81; Richards v. Ayres,
1 W. & S. 485; Kline v. Bowman, 19 Pa. 33.

The interest of Lewis H. Hartzell in the said charge of the
$2,560 did not merge: Hart v. Homiller, 23 Pa. 39; Hartzell's
App., 178 Pa. 288.

As a merger is for the benefit of him in whom the two interests unite, it will never take place when it is against his interest or when it is most for his advantage to keep the charge alive : Wallace v. Blair, 1 Grant, 81 ; Moore v. Harrisburg Bank, 8 Watts, 149 ; Bryar's App., 111 Pa. 81.

PER CURIAM, November 7, 1898 :
The report of the learned auditor in the orphans' court is an able and satisfactory treatment of all the matters of fact and law involved in the present contention. It was confirmed by the court below and we now affirm the final decree of the court upon the auditor's report.

Decree affirmed and appeal dismissed at the cost of the appellant.