## Moats *v.* Thompson et al., Exrs.

*Mortgages—Future advances—Promissory notes.*

1. Mortgages may be made to cover future advances.

2. Where the principal maker of promissory notes, signed also by others, executes a mortgage of his own real estate as of the date of the notes, and the mortgage expressly states that it is to secure not only the payment of the notes, but also any other notes or obligations which the payee of the notes might thereafter have or hold against the principal maker of the notes, the payee is entitled to apply moneys received from the proceeds of the mortgaged premises to the payment of advances made after the date of the notes and less secured than the notes; and this is so as against a joint maker of the notes.

3. In such case, there can be no application of the rule that, where, in a mortgage given to secure future advances as well as present indebtedness, the covenant between mortgagee and mortgagor does not bind the former to make subsequent advances, and they are purely voluntary, while they are protected by the mortgage, such voluntary advances relate in lien to the actual date of the advancement instead of the date of the mortgage, and are subject to all intervening encumbrances. The rule is for the benefit of such intervening encumbrancers, but the joint maker of the notes in question was not in that class.

*Mortgages—Merger — Acquisition of the land by mortgagee — Intention.*

4. Merger is a question of intention, and where the mortgagee's intention is not to merge, the mortgage will be kept alive.

5. A merger will never take place where it is against the interest of the mortgagee, or where it is to his interest to keep it alive.

*Appeals—Estoppel by record—Exceptions to auditor's report—Joint maker or surety in note.*

6. Where, on an appeal from an order dismissing exceptions to an auditor's report, it appears that the appellants admitted in their

exceptions filed in the court below and set forth in their assignments of error that the person under whom they claimed was the joint maker in a promissory note, they will not be permitted in the appellate court to assert that he was a surety only.

*Counsel fees—Parties litigant.*

7. The rule in Pennsylvania has always been adverse to the allowance of attorneys' fees to the parties to litigation.

8. Under the circumstances of this case, counsel fees were disallowed to a claimant of a fund raised by a sheriff's sale.

*Auditors—Auditor's fees—Discretion of court—Appeals.*

9. The appellate court will not interfere with the discretion of the court below in the allowance of an auditor's fee, where there is nothing in the record to show that such action was improvident.

Argued March 24, 1925.    Appeal, No. 6, March T., 1925, by Albert Miller Hustead, J. Edgar Hustead and Walter Bugh Hustead, alienees of land bound by judgment, from order of C. P. Greene Co., Sept. T., 1921, No. 2, dismissing exceptions to auditor's report, in case of Sarah E. Moats v. J. V. Thompson et al., executors of J. M. Hustead, deceased, with notice to Albert Miller Hustead et al.    Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.    Judgment modified.

Exceptions to report of A. M. Nichols, Esq., distributing fund raised by sheriff's sale of real estate.    Before RAY, P. J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed.    Albert Miller Hustead, J. Edgar Hustead and Walter Bugh Hustead, alienees of land bound by lien of judgment, appealed.

*Error assigned* was, inter alia, decree, quoting record.

*Walter C. Montgomery*, of *Crago & Montgomery*, for appellants.—As to J. M. Hustead, all the obligations are secondary, and by virtue of his position, his direct interest in the mortgage security, and his equitable rights, he occupies with reference to the claim of Piedmont Coal

Co., the position of a prior encumbrancer: Woods v. Bank, 83 Pa. 57; Willis v. Caldwell, 10 B. Mon. (Ky.) 199; Land Title & Trust Co. v. Shoemaker, 257 Pa. 213.

Appropriation cannot be made to the prejudice of a surety: Myers's App., 42 Pa. 518; Beaver Trust Co. v. Morgan, 259 Pa. 567; Bell v. Clark, 38 Pa. Superior Ct. 365; Pierce v. Sweet, 33 Pa. 151.

The mortgage debt has been fully paid, for payment of the note or bond secured by the mortgage would satisfy the mortgage as to all others interested in the outcome, no matter what agreement the mortgagor and mortgagee might seek to make with reference to the mortgage after such other's rights had accrued: Mitchell v. Coombs, 96 Pa. 430; Loverin v. Humboldt S. Dep. & T. Co., 113 Pa. 6; Woods v. Bank, 83 Pa. 57.

If the creditor holding the collateral security misapplies the proceeds thereof to the damage of the surety, or surrenders the security to the principal debtor without the knowledge or consent of the surety, he thereby discharges the surety, at least to the extent of the value of the property surrendered: Neff's App., 9 W. & S. 36; Fitchburg Savings Bank v. Torrey, 134 Mass. 239; Holt v. Bodey, 18 Pa. 207; Beaver Trust Co. v. Morgan, 259 Pa. 567.

A mortgage may be given to secure future advancements as well as a present indebtedness. But the effect of such mortgage, as to junior encumbrances, depends entirely on whether the mortgagee is bound by the contract to make the advance: Lyle v. Ducomb, 5 Binney 585; Moroney's App., 24 Pa. 372; Bank of Montgomery County's App., 36 Pa. 170; Land, Title & Trust Co. v. Shoemaker, 257 Pa. 213.

As a general principle, when the legal and equitable estate unite in the same person, a merger is the necessary result: Cooley's App., 1 Grant 401; Hansel v. Lutz, 20 Pa. 284; Carpenter v. Koons, 20 Pa. 222; Metzger's App., 71 Pa. 330; Dull's Est., 137 Pa. 116; Cock v. Bailey, 146 Pa. 328.

*William J. Kyle,* of *Kyle & Reinhart,* with him *William A. Seifert* and *Reed, Smith, Shaw & McClay,* for appellee.—The mortgage was a valid security not only for the eight notes of $20,000 each but for all other liabilities, present or future, of the mortgagor to the mortgagee: Lyle v. Ducomb, 5 Binn. 585; Montgomery County Bank's App., 36 Pa. 170: Land Title & Trust Co. v. Shoemaker, 257 Pa. 213; Dahlem's Est., 175 Pa. 444; Moroney's App., 24 Pa. 372; Stewart v. Stocker, 1 W. 135; Taylor v. Cornelius, 60 Pa. 187; Myers' App., 42 Pa. 518; Ridgway v. Longaker, 18 Pa. 215; Haffey v. Carey, 73 Pa. 431; Ballentine v. White, 77 Pa. 20; Maffitt v. Rynd, 69 Pa. 380; Parmentier v. Gillespie, 9 Pa. 86.

Appellant's predecessor in title was a maker of the notes and not surety: Diffenbacker's Est., 31 Pa. Superior Ct. 35; Delaware County Trust Co. v. Haser, 199 Pa. 17; Penn S. D. & T. Co. v. Kennedy, 175 Pa. 160; Schimmel v. Cohen, 275 Pa. 117.

The releases of the lien of the mortgage from parts of the mortgaged premises were proper and did not relieve appellants of their liability under the judgment.

The mortgage was not merged with the title to the real estate in the hands of appellee: Continental T. & T. Co. v. Devlin, 209 Pa. 380; Bryar's App., 111 Pa. 81; Moore v. Bank, 8 Watts 138; Wallace v. Blair, 1 Grant 75; Hartzell's Est., 188 Pa. 384; Germania Bld. Assn. v. Neill, 93 Pa. 322; Richards v. Ayers, 1 W. & S. 485; Duncan v. Drury, 9 Pa. 332; Saint v. Cornwall, 207 Pa. 270.

The mortgagee had a right to apply the payments to that part of the mortgage debt least secure: Borland v. Murphy, 92 Pa. 91; Moroney's App., 24 Pa. 372; Taylor v. Cornelius, 60 Pa. 187; Dahlem's Est., 175 Pa. 444; Johnson's App., 37 Pa. 268; Bell v. Clark, 38 Pa. Superior Ct. 365; Richard's Est., 185 Pa. 155.

OPINION BY MR. JUSTICE SCHAFFER, May 4, 1925:

This controversy grows out of the complicated affairs of Josiah V. Thompson which have been much before the courts. There are a number of transactions involved and a full recounting of them would greatly extend this opinion. We will endeavor to confine what must be said to a statement of those facts and circumstances, the portrayal of which is essential, in order that the application to them of the legal principles, which in our judgment stand in the way of a realization by appellants of their aims, may be apparent.

Thompson, on July 30, 1914, applied to E. S. Hackney for a loan of $160,000. He offered as security therefor eight notes, each for $20,000, signed by himself and by I. W. Seaman and J. M. Hustead, father of appellants. Opposite each of the signatures of the two latter the word "surety" was written. In addition to these obligations, Hackney required of Thompson a mortgage for $160,000 covering his interest in certain coal lands. This mortgage bears the same date as the notes, July 30, 1914, recites Thompson's indebtedness on them, and then provides, "Now, for the better securing the aforesaid debt or sum of one hundred sixty thousand ($160,000) dollars, evidenced by the promissory notes executed by the said Josiah V. Thompson and his sureties, as aforesaid, as well as for the securing of any other notes or other evidences of indebtedness which the said Edgar S. Hackney now has or holds or may hereafter have or hold against the said Josiah V. Thompson, this mortgage witnesseth," etc. At the time the mortgage was executed, Hackney was not the holder of any other notes made by Thompson but was liable as endorser on certain additional obligations of Thompson's, some of which he was required subsequently to pay and take up.

Suit was brought by Hackney on the eight notes and judgment recovered by default against the three signers thereof in Fayette County. The judgment was transferred to Greene County, where it became a lien on the

real estate of Hustead. This land, subject to the lien of the judgment, was later conveyed by him to his three sons, who are the appellants before us. In addition to the Hackney judgment, more than a hundred other judgments had been entered against Thompson and Hustead, on one of which, that of Sarah E. Moats, execution was issued, and the land, which had been conveyed to appellants, subject to the lien of the Hackney and other judgments, was sold for $901,000. Out of the distribution of this fund and the claim of the $160,000 judgment upon it, the questions submitted to us arise. More than a year prior to the sale, Hackney assigned his judgment to the Piedmont Coal Company, the other party in interest and appellee before us, and also assigned to it the mortgage.

Thompson had become bankrupt. From time to time during the bankruptcy proceedings portions of the mortgaged premises were sold under direction of the bankruptcy court. By its direction, the portions sold were released from the mortgage, the full purchase price being paid to the mortgagee. Appellants' main contention is that Hackney and the assignee of the judgment and mortgage, the Piedmont Coal Company, were bound to apply these sums first of all to the discharge of the $160,000 judgment, whereas it is the contention of the Coal Company, as it was of Hackney, that they had the right under the terms of the mortgage to do as was done—to apply any funds realized from the mortgaged premises to other less secured claims held by them. The latter view was adopted by the auditor and court below and distribution awarded out of the fund realized from the sale of the Hustead property to the judgment without deduction of sums obtained from the mortgaged premises which had been appropriated to other indebtedness held by Hackney and the coal company against Thompson. As the land sold at the sheriff's sale belonged to appellants by virtue of the conveyance from their father, a denial of the Coal Company's right to participate in the distribution on the judgment (which, if all moneys received from

the mortgaged premises had been appropriated to it would have been paid in full by such moneys) would redound to appellants' advantage as it would increase the balance coming to them out of the proceeds of the sheriff's sale.

The broad question for determination is whether the mortgage was a valid security in the hands of Hackney and his assignee, not only for the $160,000 of notes, but for other liabilities of Thompson to Hackney. In considering this question, it is important to bear in mind that the mortgage was given by Thompson alone, that Hustead had no connection with it, that it was not a lien on any of his property, and that the lien which bound his property was that of the judgment recovered on the notes which he had signed. While it is argued by appellants that it was the common understanding and agreement between Thompson, Hustead and Hackney that the mortgage was designed to provide for two distinct classes of liens, primarily as security for the eight notes, and secondarily as security for any other obligations of Thompson which the mortgagee might thereafter acquire, the difficulty is that there is nothing in the record upon which to found the assumption of such a common understanding. The mortgage was given for Hackney's protection; Hustead had nothing to do with it. The express provision therein was that it was given not only to secure the $160,000 of notes but "for the securing of any other notes or evidences of indebtedness which the said Edgar S. Hackney......may hereafter have or hold against the said Josiah V. Thompson." As the mortgage was not negotiated for Hustead's benefit and protection, but to care for Hackney alone, it is difficult to see how in any respect the former or those claiming through him could set up any rights under it.

Appellants seek to avail themselves of the rule that where in a mortgage given to secure future advances as well as present indebtedness, the covenant between mortgagee and mortgagor does not bind the former to make

subsequent advances, and they are purely voluntary, while they are protected by the mortgage, such voluntary advances relate in lien to the actual date of the advancement instead of the date of the mortgage, and are subject to all intervening encumbrances: Ter-Hoven v. Kerns, 2 Pa. 96, 99; Bank of Montgomery County's App., 36 Pa. 170; Taylor v. Cornelius, 60 Pa. 187, 196. True there is such a rule, but its introduction into this case merely clouds the issue, for it does not lend any aid to appellants who stand in the same position as the judgment debtor. The rule is for the benefit of *intervening encumbrancers* and Hustead was not within that class. There is no question involved here as to the rights of a mortgagee who makes advances under a prior mortgage, subsequent to the date of a junior encumbrance. If there were such a question presented, then it might be of some importance to determine relative dates and to conclude definitely whether Hackney was at the date of the mortgage liable as endorser of Thompson's obligations which he later paid. There can be no doubt under the very terms of the mortgage that it was to secure future payments; the date of Hackney's lien, by reason of having made such payments, is immaterial under the circumstances here presented. The mortgage being a valid security for the payments made subsequently by Hackney as well as for the eight notes given on its date, Hackney and the coal company had a right, since it was to their advantage as creditors to do so, to apply moneys received from the mortgaged premises to those claims less secured than the eight notes, since there was no appropriation of the moneys to any other particular claims: Watt & Co. v. Hoch, 25 Pa. 411, 413; Pierce v. Sweet, 33 Pa. 151, 157; Johnson's App., 37 Pa. 268, 274; Smith v. Brooke, 49 Pa. 147, 151; Richard's Est., 185 Pa. 155, 159; Bell v. Clark, 38 Pa. Superior Ct. 365, 375. Appellants, standing in the shoes of their father, a judgment debtor with Thompson, cannot avail themselves of a rule which only applies as between rival creditors.

There is no doubt but that mortgages may be made to cover future advances and that they are valid and binding: Lyle v. Ducomb, 5 Binn. 585; Moroney's App., 24 Pa. 372; Taylor v. Cornelius, 60 Pa. 187; Land Title & Trust Company v. Shoemaker, 257 Pa. 213. The mortgage in question by its very terms covers any notes which Hackney might thereafter endorse. It is immaterial when the lien of such an advance would attach, because there is here no question of conflicting liens, and also because by the application of payments received under this mortgage these later advances have been paid.

After Thompson had become bankrupt, the Piedmont Coal Company submitted an offer to purchase all the assets of his estate from his trustee for $5,500,000, which offer was approved by the court and the property turned over. At the time of the conveyance of the real estate, however, it was expressly stipulated that the purchaser, the Piedmont Coal Company, did not assume the mortgage. When the coal company subsequently acquired the mortgage, which it took over to protect itself, the circumstances were such as to show clearly its intention to be that the lien of the mortgage should be kept alive. The position taken by appellants is that by reason of the purchase by the coal company of the Thompson lands from the trustee in bankruptcy and its subsequent acquiring of the mortgage and judgment they were merged and extinguished, the mortgage and judgment being for the same debt, and the two obligations are to be read together. Without giving our full assent to the latter proposition, even if it were conceded, we think no merger took place. Merger is a question of intention and where the mortgagee's intention is not to merge, the mortgage will be kept alive: Continental Title & Trust Company v. Devlin, 209 Pa. 380; Bryar's App., 111 Pa. 81, 91; Duncan v. Drury, 9 Pa. 332; Moore v. Harrisburg Bank, 8 Watts 138. A merger will never take place where it is against the interest of the mortgagee or when it is to his advantage to keep it alive:

Wallace v. Blair, 1 Grant 75, 81; Hartzell's Est., 188 Pa. 384, 390, it being presumed that there was an intention in such case to keep it alive: Penington v. Coats, 6 Wharton 277, 283; Richards v. Ayres, 1 W. & S. 485, 487.

Was Hustead a surety on or a joint maker of the notes and, if a surety, did the release by Hackney and the coal company of part of the land. of Thompson from the lien of the mortgage and the judgment result in the release of Hustead's responsibility on the notes? This question is presented to us by appellants, with a supporting argument that Hustead was a surety and was released. We fail to see how appellants can now maintain that their father was not a joint maker of the notes in view of the fact that they admitted in their exceptions filed in the court below which are set out in their assignments of error before us that he was a joint maker. This being true we shall consider his relation to the notes as appellants proclaimed it, that of a joint maker and the question they would now raise drops out of consideration.

Appellants further complain against an allowance made to the coal company in its calculation of the total due on the judgment of an attorney's commission of two per cent on $228,776.68. The mortgage provides an attorney's commission in case it had to be collected by foreclosure proceedings. No proceedings were taken on the mortgage. There is no provision in the notes for an attorney fee. The rule in Pennsylvania has always been adverse to the allowance of attorney's fees to the parties to litigation: Illinois Automobile Insurance Exchange v. Braun, 280 Pa. 550, 558-9; Whitney v. Jersey Shore Borough, 266 Pa. 537, 547; DeWitt v. Keystone Nat. Bank, 243 Pa. 534, 539; Smith v. Equitable Trust Co., 215 Pa. 413; Winton's App., 87 Pa. 77, 84. We are unable to find any authority for the allowance of attorney fees under the circumstances here appearing and in this respect the auditor and court below permitted

appellee to receive a share of the fund to which it was not entitled.

Challenge is made of the amount of the auditor's fee. It was approved by the court below and there is nothing on the record satisfying us that this approval was improvident. We will not, therefore, interfere with the lower court's exercise of discretion in regard to it: Stockdale v. Maginn, 207 Pa. 226, 227; Com. v. Traders & Mechanics Bank of Pittsburgh, 268 Pa. 526, 529-30.

All of the assignments of error are overruled except the eighth relating to the attorney's commission of $4,-592.13, which is sustained, and it is directed that the court below shall make distribution to the Piedmont Coal Company, less the amount heretofore awarded for attorney's commissions; costs to be paid out of the fund for distribution.