(37 Misc. Rep. 547.)

## BOWEN v. YOUNG.

(Supreme Court, Special Term, New York County. March, 1902.)

1. CONTRACT TO MANUFACTURE—CONSTRUCTION.

Where a contract was made for the manufacture of certain brass clips, to be taken by the vendee within a reasonable time, reference being had to the development of its business, the question as to what time was reasonable was for the jury.

2. SAME—ENFORCEMENT.

A manufacturer entered into a contract October, 1895, for the manufacture of 8,000 pounds of brass clips, to be taken within a reasonable time. The vendee up to February, 1897, had taken only 946 pounds, when it assigned its rights under the contract, and the assignee refused to order any more until December, 1901. *Held*, that an assignee of the manufacturer could sue to enforce the contract, as against the assignee of the vendee, without tendering the balance of the clips, and could show that up to the time of the assignment to him the manufacturer continued to offer to deliver the clips to the defendant, and the latter refused to accept them.

3. NOVATION.

Where parties to a contract agreed with a third person that one of the parties should be discharged from the contract, and the third party substituted as vendee, there was a novation, authorizing the other party to enforce the original contract according to its terms against the third party.

Action by Adna G. Bowen against Malcolm Young. Demurrer to complaint overruled.

Adna G. Bowen, in pro. per.

Van Schaick & Norton (Manderville C. Jacobus, of counsel), for defendant.

WRIGHT, J. It appears by the complaint that in October, 1895, Macintosh & Rooney, who were copartners under the firm name of the Niagara Clip Company in the manufacture and sale of paper clips, at Buffalo, N. Y., entered into a contract with Dennis J. & John F. Gaynor, who were copartners under the name of Gaynor & Mitchell Manufacturing Company, whereby the latter agreed to make and deliver to the Niagara Clip Company, at Bridgeport, Conn., 8,000 pounds of "Niagara" clips, of spring brass wire, at the agreed price of twenty-one dollars ($21) per 100 pounds, and also to make the neces-

sary tools therefor, and to perform services in and about the making of the same, for which the said Macintosh & Rooney agreed to pay the sum of one hundred dollars ($100); and that when the said four tons, or 8,000 pounds, of clips had been completed and paid for, then the said Gaynors should refund the said one hundred dollars ($100) to the said Macintosh & Rooney; and that said four tons, or 8,000 pounds, of clips should not all be made and delivered at one time, but that the same should be made and delivered as required, and in such quantities as should from time to time be ordered, the same to be paid for as ordered, provided, however, that the whole quantity contracted for should be taken within a reasonable time, reference being had to the development of the business of the Niagara Clip Company; that in September, 1896, said Macintosh & Rooney sold to the defendant Young their interest in said contract, subject to the liability therein to take the said 8,000 pounds of Niagara clips, and the said Gaynors assented to said substitution, and ratified the contract, and accepted the defendant as the purchaser in the said contract in the place of Macintosh & Rooney, and that defendant Young, after his purchase of the interest of Macintosh & Rooney in the said contract, continued under the said name of the Niagara Clip Company to place orders with the Gaynors under said contract for Niagara clips, until February 16, 1897, that being about four months after his purchase of the Niagara Clip Company; that before the 1st day of January, 1896, the said Gaynors made the tools mentioned in the contract, and from time to time, down to and including the 16th day of February, 1897, made and delivered, as ordered, to Macintosh & Rooney, and to the defendant, 946 pounds of clips, under said contract. It further appears from the complaint that ever since February 16, 1897, the defendant has refused and neglected, and still refuses and neglects, to take any more of said Niagara clips, or to place his order for the same or carry out the contract in any respect; and that the said Gaynors have at all times been willing and ready to carry out said contract, but have been prevented from so doing by the defendant refusing to take and pay for said clips; that after such refusal to perform by the defendant, and before the commencement of this action, said contract, with all claims for the breach thereof, were assigned by the said Gaynors to the plaintiff, and the plaintiff demands $1,292.72 damages for the loss of profits on the 7,054 pounds, that being the balance of the 8,000 pounds contracted for after deducting the 946 pounds delivered prior to and inclusive, on the 16th day of February, 1897.

The defendant demurs to the complaint on the ground, among others, that the complaint does not show that a "reasonable time, reference being had to the development of the business of the Niagara Clip Company," was given the defendant by the Gaynors, as required by the contract, within which to order and take the said balance of the clips contracted for. The term "reasonable time" is a relative one, and the meaning depends entirely upon the attendant circumstances. 19 Am. & Eng. Enc. Law, 1089, and cases cited. In this case, the question of reasonable time being dependent upon special and peculiar circumstances, to wit, "the development of the business of the Niagara Clip Company," as stated in the contract, it becomes a question for the jury

to determine, in view of all the facts in the case as they may be proved on the trial, whether or not the defendant had a reasonable time within which to order and take the clips prior to the assignment by the Gaynors of their interest in the contract to the plaintiff. O'Brien v. Phœnix Ins. Co., 76 N. Y. 459; 19 Am. & Eng. Enc. Law, 642, and cases cited. Under the complaint it is proper to show that the Gaynors were ready and willing to carry out the contract at all times up to the date of their assignment of their interest therein; and from the allegation that the Gaynors "are still ready to fulfill" it is reasonable to infer that the assignment was made immediately before the commencement of the action, which was about December 19, 1901, and that the defendant had up to that date, since February 16, 1897, in which to order and take the clips, and in which to develop the business. The defendant could not, by neglecting to develop the business of the Niagara Clip Company, release himself from fulfilling his obligation in the contract; but he was entitled to have a reasonable time in which to develop the business. And whether or not he had a reasonable time for that purpose prior to the assignment by the Gaynors of their interest in the contract, is a question for the jury.

A further ground of demurrer is that it does not appear in the complaint that the Gaynors had tendered a performance of the contract by offering to deliver the said balance of 7,054 pounds of the clips. In determining whether a complaint should be sustained as sufficient, we have to consider, not only the facts alleged, but also all that can, by reasonable and fair intendment, be implied from them; and averments which sufficiently point out the nature of the pleader's claims are sufficient, if under them he would be entitled to give the necessary evidence to establish his cause of action. Coatsworth v. Lehigh Val. Ry. Co., 156 N. Y. 451, 51 N. E. 301. Under the contract it appears that the clips were to be manufactured from time to time in such quantities as ordered. And it appears that the defendant, since February 16, 1897, up to the time of the assignment, refused to order any of the clips. The word "refuse," as defined by the Century Dictionary, means "to deny, as a request, demand, or invitation; to decline to accept; reject; as to refuse an offer." Therefore, under the complaint, it is proper to show that the Gaynors at any time or times since February 16, 1897, down to the time of their assignment to the plaintiff, offered to manufacture and deliver to the defendant clips, and that such offer or offers were declined by him. Under those circumstances it was not necessary to make a tender of the goods themselves, as it would have been an idle ceremony. In Canda v. Wick, 100 N. Y. 127, 2 N. E. 381, the plaintiff agreed to deliver to the defendant 400,000 brick at an agreed price. The brick were to be delivered in quantities from time to time at the plaintiffs' convenience. After the plaintiffs had delivered 2,000 brick the defendant refused to receive the residue. On several occasions thereafter, the plaintiffs expressed a willingness to go on with the contract, but the defendant refused to receive the brick. Judge Andrews, delivering the opinion of the court, says:

"It was not necessary that the plaintiffs should tender the whole 400,000 brick in order to put the defendant in default. It was not contemplated that

the entire number should be delivered in one mass; but, as is evident from the situation of the parties and the surroundings, they were to be delivered from time to time, at the convenience of the plaintiffs, but without delaying the defendant in prosecuting the work in which they were to be used. When the defendant refused without adequate reason to accept the cargo, * * * the plaintiffs were at liberty to treat the contract as broken, and were not bound to make an actual tender of the remainder of the brick before bringing the action. This would have been a useless ceremony."

In Howe v. Moore (Sup.) 14 N. Y. Supp. 236, the action was brought by the plaintiff to recover damages for failure to accept goods manufactured to his order. The plaintiff manufactured the goods, and was directed by the defendant to hold them until further orders, and was subsequently informed by the defendant that he would not take them. The plaintiff urged the defendant to take them, who refused. Judge Van Brunt, in delivering the opinion of the court, says, "There was no necessity to make a formal tender when there had been a refusal to receive." See, also, Baumann v. Pinckney, 118 N. Y. 604, 23 N. E. 916; Ware v. Berlin, 43 La. Ann. 534, 9 South. 490; Cornwell v. Haight, 21 N. Y. 463; 19 Am. & Eng. Enc. Law, 904, and cases cited.

Another ground of demurrer is that there was no privity of contract between the Gaynors and the defendant Young. This is not correct, for the complaint alleges that in September, 1896, said Macintosh & Rooney assigned their interest in the contract to the defendant, subject to the liability to perform the obligations of Macintosh & Rooney therein, and that the Gaynors assented to the substitution of the defendant in the place of Macintosh & Rooney in said contract, and that the defendant accepted and ratified the same, and that the defendant had ordered and received a portion of the clips under the contract. Therefore the defendant agreed to perform the liability of Macintosh & Rooney, and the Gaynors accepted the obligation to perform in the place of the obligation of the defendant's assignors. This constituted a novation. In Kelso v. Fleming, 104 Ind. 180, 3 N. E. 830, it is said that "novation means simply the substitution of one debtor by mutual agreement for another. It is a necessary incident of the transaction that the old debt shall have been discharged by the new arrangement. The discharge of the old debt must be contemporaneous with, and result from, the consummation of the arrangement with the new debtor." It appearing from the complaint that, by the agreement of Macintosh & Rooney and the defendant Young and the Gaynors that Macintosh & Rooney should be discharged from their obligations, and that defendant Young should be substituted in their place as purchaser of the clips, a novation was thereby created, and the Gaynors were invested with the right to compel performance of the contract by the defendant. Therefore the last ground of demurrer is not well taken. See, also, Shaw v. McGregory, 105 Mass. 96; Pars. Cont. 245. The consideration appears in the release of one party and the substitution of another. Bacon v. Daniels, 37 Ohio St. 279; 16 Am. & Eng. Enc. Law, 865, and cases cited.

The complaint alleging that the Gaynors, subsequent to the breach of the contract by the defendant, assigned their interest in the con-

tract, together with all claims for damages for the breach thereof, to the plaintiff, the action is properly brought by him.

The demurrer is therefore overruled, with costs. The defendant may have 20 days after the entry and service of the order which may be entered on this decision in which to serve his answer. Ordered accordingly.