## FULLER v. CITY NAT. BANK OF HURON, S. D., et al.
### No. 304.

District Court, D. South Dakota.
June 13, 1930.

W. G. Robinson, of Pierre, S. D., for plaintiff.

Churchill & Benson, of Huron, S. D., for defendants.

ELLIOTT, District Judge.

I have considered the issues presented in Re Fuller v. City National Bank of Huron, S. D., et al., and have determined them in favor of the plaintiff and against the defendants.

This is an equity suit in behalf of plaintiff, and the facts in the case are practically all admitted, the undisputed evidence disclos-

ing that prior to January 2, 1924, the City National Bank of Huron and the First National Bank of Huron were national banking corporations doing business in said city; that on the 2d day of January, 1924, the board of directors of the former adopted a resolution authorizing the sale of its assets and the transfer of its liabilities to the First National Bank of Huron, and in the resolution provided that the latter was also to assume all deposit liabilities and liabilities of any other character; that on the same date the directors of the First National Bank had a meeting duly held confirming the purchase of the City National Bank upon the above terms; that, pursuant to the resolutions of the two boards of directors respectively, the City National Bank turned over to the said First National Bank its assets consisting of deposits and bills receivable, and the said First National Bank received the assets of the said City National Bank and assumed its liabilities without any attempted compliance with the statutes of the United States controlling the consolidation of national banks organized under the statutes of the United States (12 USCA § 33).

It is conceded by the record that these two national banks were in the same state. There was no attempted approval of the Comptroller of the Currency of the United States, nor was there any published notice stating the time, place, and object of the meeting, published for four successive weeks, with written notice to shareholders ten days prior to such meeting, as required by the statutes of the United States. Neither was there any provision or opportunity provided for shareholders who opposed the consolidation being paid for their stock respectively at a rate to be determined, as provided by statute (12 USCA § 33). The assets of the City National Bank, however, were physically delivered to the said First National Bank.

It is disclosed that at the time of this transaction the City National Bank was insolvent, and it is perhaps equally clear that the First National was in the same condition. It further appears that in the short space of twenty-four days the said First National Bank closed its doors on the 26th day of January, 1924. This attempted consolidation did not have the approval of the Comptroller of the Currency, and he thereafter made findings of insolvency and appointed receivers of both institutions, recognizing the existence of both of them rather than a merger of the two into one; and on or about the 26th day of January, 1924, the Comptroller of the Currency of the United States of America duly appointed A. G. Hill receiver of the said First National Bank, and the bank is now, and since that time has been, in process of liquidation. It also appears that in June, 1924, the said Comptroller duly appointed G. O. Martin receiver of the said City National Bank of Huron, and he ever since has been, and now is, such officer.

A notice to present claims against the First National Bank was thereafter duly published by said receiver; also notice to present claims was duly published by said G. O. Martin, receiver of the City National Bank. That pursuant to the formal notice, on the 8th day of October, 1924, this plaintiff filed his proof of claim with such receiver of the First National Bank of Huron, upon a certain certificate of deposit in the sum of $4,064.44, that plaintiff has received from the said City National Bank while the same was a going banking corporation, and represented moneys deposited by him payable to plaintiff, was not subject to check, drawing 5 per cent. per annum interest if left for six months, which said certificate was a valid claim against the City National Bank at the time of the transfer of its assets to the First National Bank as above stated. And the receiver of said bank delivered to plaintiff receiver's receipt therefor and certificate of the amount due upon said claim.

That thereafter two dividends were duly paid by said receiver to this plaintiff, amounting in the whole to $650.30. It appears from the testimony that the plaintiff, when he filed his claim with the receiver of the First National Bank, attached the original certificate of deposit issued by the City National Bank to him to his proof of claim and deposited it with, and left it with, the receiver of the First National Bank. That on or about the 8th day of August, 1927, plaintiff tendered to the said receiver of the said City National Bank of Huron his proof of claim against the City National Bank in the sum of $3,729.29 upon said certificate of deposit, that being the amount of the certificate of deposit with interest, less the payments by the receiver of the First National Bank. And the said receiver of said City National Bank rejected plaintiff's claim on the 17th day of August, 1927.

It appears that plaintiff now is, and ever since the delivery of said certificate of deposit to him has been, the owner and entitled to the benefits thereof. It affirmatively appears from an examination of the record that this plaintiff took no part in the pretended

transfer of the assets of the City National Bank to the First National Bank; that he in no manner dealt with the said First National Bank as a depositor or otherwise while it was a going concern and before it closed its doors and a receiver was appointed. It appears that he had heard of the transaction to transfer the assets of the City National Bank to the First National Bank, but it does not appear that he knew anything of the terms of transfer or the liabilities supposed to be incurred by the First National Bank by reason of such transaction. He did no business with the First National Bank between the 2d day of January, 1924, and the date of the closing of the First National Bank. He did, however, file his claim with the receiver of the First National Bank after it had closed as above stated.

It is conceded that the First National Bank took the moneys and credits and property of the City National Bank and mixed them with the funds and property of the First National Bank, intermingling the same, and that patrons of the City National Bank were advised to and did draw checks on their accounts as they existed in the City National Bank upon the First National Bank, and these were paid by the latter for the few days intervening between the said transfer and closing of the First National Bank.

■ It is obvious that there was no legal consolidation of the City National Bank and the First National Bank of Huron, S. D. The transfer of the assets by the officers of the former to the latter as above stated was unlawful and illegal, and as a matter of law the First National Bank became a trustee for the benefit of the creditors of the City National Bank, holding its property, and, if a proper action had been started by the creditors of the City National Bank, its property could have been kept intact for the benefit of its creditors.

■ It is a fact that the assets of the two banks were wrongfully intermingled in the manner above indicated, but such wrongful intermingling did not constitute a "de facto consolidation" as urged by counsel for the defendants. It constituted a wrongful scrambling of the assets of the two corporations without authority and without relieving the stockholders of either corporation of their respective liabilities as such, and all of said acts were ultra vires of both corporations, and were wholly null and void. This attempted transfer of the property of the City National Bank was outside the object of its creation as defined in the law of its or-

ganization, and therefore beyond the powers conferred upon it by Congress, and was not voidable only, but wholly void, and of no legal effect. The objection to the transfer of this property is not merely that the corporation ought not to have made it, but that it could not make it. Such a contract could not be ratified by either party because it could not have been authorized by either. Even though there was performance on either side, that could give the unlawful contract no validity. Central Transportation Company v. Pullman's Palace-Car Co., 139 U. S. 24, 59, 11 S. Ct. 478, 35 L. Ed. 55.

It is clear and is conceded by all parties to this action that, when the First National Bank closed, this plaintiff had the said certificate of deposit and had a claim for it against the said City National Bank that issued it as well as a claim against the First National Bank of Huron; that it assumed it with other debts and intermingled the assets of the said City National Bank with its own assets.

■ The real issue that is presented here by counsel for the defendants, City National Bank and its receiver, is that there was novation, and that thereby this defendant, City National Bank, had been released by the plaintiff and the First National Bank substituted as plaintiff's debtor. A novation is defined by the statutes of South Dakota, section 788, Revised Code 1919, as follows: "Novation is the substitution of a new obligation for an existing one."

Clearly there was no substitution of the receiver's certificate for the certificate of deposit held by this plaintiff. Substitution as used in this statute is to "put in the place of another in an exchange." The statutes of South Dakota go into the classification of substitution by section 789, Revised Code of South Dakota 1919, and the only section that is material is: "2. By the substitution of a new debtor in place of the old one, with intent to release the latter."

The court finds that there had been no deal with the First National Bank and no connection with this transfer on the part of the plaintiff prior to the filing of his claim with the receiver, which was long after the First National Bank had ceased to be a going concern. It is urged by the defendants that the fact that the plaintiff filed his certificate of deposit with his proof of claim with this officer of the Comptroller having possession of the First National Bank was to part with its title, and that the receipt of the certificate of the receiver constituted a con-

sent on the part of the plaintiff to a substitution of the First National Bank as plaintiff's debtor instead of the City National Bank..

To constitute novation, it must clearly appear that, where another person becomes a debtor instead of a former debtor, he was so accepted by the creditor (the plaintiff in this case), who thereupon discharged the first debtor. In other words, it must be shown that the parties in interest assented to the extinguishment of the old debt. McCartney v. Kipp, 171 Pa. 644, 33 A. 233, 235.

"It is a necessary incident of the transaction that the old debt shall have been discharged by the new arrangement. The discharge of the old debt must be contemporaneous with, and result from, the consummation of the arrangement with the new debtor." Bowen v. Young, 37 Misc. Rep. 547, 75 N. Y. S. 1027, 1030; Kelso v. Fleming, 104 Ind. 180, 3 N. E. 830.

"It [a novation] is never presumed, but must be established by the full discharge of the original debt, by the express terms of the agreement, or the acts of the parties, whose intention must be clear. * * *" Henry v. Nubert (Tenn. Ch.) 35 S. W. 444.

"Novation takes place only when the contracting parties expressly disclose that their object in making the new contract is to extinguish the old contract; that otherwise the old contract remains in force and the new contract is added to it, and each gives rise to an obligation still in force." Hard v. Burton, 62 Vt. 314, 20 A. 269, 271.

The record discloses without dispute, and it is conceded by all parties, that there could have been no claim of novation except that the plaintiff presented his claim against the receiver of the First National Bank. It is not pretended that the presentation of this claim with the certificate of deposit paid the certificate or that the certificate of deposit was canceled, nor can it be reasonably contended that the plaintiff could not get possession of the certificate by proper action if upon demand it were refused by said receiver.

The record nowhere discloses that, while the First National Bank of Huron was a going concern, plaintiff took any action with reference to this transfer either affirmatively or negatively. The mere fact that it does appear by the record that he knew of the consolidation, that it was a matter of considerable notoriety, and that he had heard about it and seen an account of it in the newspaper, is far short of constituting an assent to the transfer, and far short of taking the First National Bank as his debtor and relieving the City National Bank.

There is absolutely no evidence in this case that the failure of this plaintiff to object to the transfer or to assert his dissatisfaction in any manner prejudiced these defendants. Neither is there any evidence that his accepting the two dividend payments was to the prejudice of these defendants. It was a part payment by one who, contracting with his original debtor, had assumed the liability, and could lawfully be accepted by him without releasing his original debtor, and to the extent that the receiver paid dividends upon this claim the City National Bank was benefited.

I am of the opinion further that the status of this claim of this plaintiff was established and must be determined as it existed when the First National Bank went into the hands of the receiver; that whatever may have been done by this plaintiff in the way of proving his claim against, and accepting payments by, the receiver, in no manner can affect the rights of the plaintiff involved in this action because it was not done "in due course of business," and his right of action is no greater and no less than when the First National Bank was closed and the receiver appointed, except to the extent that he has received payments from the receiver.

I can find no sufficient evidence in this record to sustain the finding that there was an intent on the part of this plaintiff to release the City National Bank either before or after the said First National Bank closed its doors.

In re Anglo-American Land Mortgage Co. v. Lombard (8 C. C. A.) 132 F. 721, 739, the Court of Appeals of this Circuit, by an opinion by Justice Van Devanter, has determined the issues of law here presented adversely to the defendants.

It was there held that the transfer of the property by one corporation to the other did not discharge the stockholders from liability nor did it substitute the corporation to which the property was transferred in place of the original debtor, and it is there held that whether the former company could and would transfer this agreement is a risk which was assumed by the Kansas Company and its stockholders, but not by its creditors.

It is further held that: "No possible arrangement among the Kansas Company, its stockholders, and the Missouri Company,

made after they had wholly disabled the Kansas Company from paying its debts, or made in the immediate contemplation of so doing, could destroy or affect the right of the creditors of the Kansas Company to enforce their demands against its stockholders to the full extent of the liability imposed by law. There is no finding that the holders of the indebtedness here sued upon accepted the Missouri Company as a substituted debtor, or that they agreed to discharge or release the Kansas Company or its stockholders; nor can such an agreement be implied, as a matter of law, from the facts found, or any of them. True, the holders of these claims treated and dealt with the Missouri Company as having succeeded to the business of the Kansas Company, and as having agreed to discharge its debts and liabilities. They also established their claims in the receivership suit, and accepted dividends derived from a sale of the entire assets of the Missouri Company, a material portion of which was not obtained through the Kansas Company. But there is nothing in this which is inconsistent with a purpose and right to assert and enforce these claims against the Kansas Company and its stockholders. Indeed, in the receivership suit these claims were proved against both companies, and the fair legal inference from the proceedings is that they were allowed by the master and the court against both companies. A creditor who collects a portion of his claim from a third person, who after the debt is contracted agrees with the debtor to pay it, does not thereby discharge the debtor, or become estopped from collecting the balance from a surety or guarantor. There is in this no election between inconsistent claims or remedies. The stockholders of the Kansas Company were benefited, not injured, by what was done by these creditors."

In announcing these rules of law, I find by a review of the numerous citations by counsel respectively, the court simply followed the rule universally announced wherever and whenever this question has been presented.

Without further comment, I am of the opinion that there can be no question upon this record that there is no proof to sustain the elements of novation. Defendants have argued a lack of good faith on the part of the plaintiff and the Comptroller of the Currency in bringing this action. The question of good faith in no manner enters into the rights of this plaintiff to recover upon the claim set forth in this action. The defendants' liability is not affected by any agreement that may have been entered into whereby the results of the litigation are to be distributed. The plaintiff could very properly, before bringing an action of this kind concededly for the benefit of all creditors thus situated, urge that he be joined in the expenses by those to be benefited, and they could as consistently urge that they should share in the benefits, if any, derived from the litigation, the expenses of which they were willing to share.

Defendants have urged also that this action is really to establish a claim against the City National Bank, but with the ultimate purpose of enforcing the statutory liability of the stockholders of that bank. Conceding this to be true, it is of record here that the stockholders have been made aware of this ultimate purpose, and it is conceded that they presented this defense.

The plaintiff is therefore entitled to judgment that he has a good, proper, and provable claim against the City National Bank of Huron, S. D., and the receiver thereof, defendants, in the total sum of $3,414.14, and with directions to the receiver of the City National Bank to accept and file the said claim of the plaintiff as a claim and indebtedness of the City National Bank of Huron, in favor of the plaintiff and that it is properly provable as a claim against the said bank.

I have therefore to-day signed findings of fact and conclusions of law upon all of the issues in favor of the plaintiff and against the defendants, and order for judgment may be prepared and forwarded. To all of which the defendants except, and exception is allowed.