J. S. McCartney in Trust for the Tarentum Bank, for Use of the First National Bank of Tarentum, now for Use of Charles Lockhart v. A. V. Kipp. Appeal of Charles C. McLain, Administrator.

*Evidence—Competency of witness—Party dead—Contest between execution creditors.*

In a contest between an execution creditor and the administrator of an execution creditor over a distribution of the proceeds of a sheriff's sale, the defendant in the execution is a competent witness.

*Judgment—Contract—Novation.*

The acceptance of a new security for an existing debt does not operate as a payment unless it was intended by the parties to extinguish the old debt and substitute the new securities for it. New paper of the debtor and paper of third persons accepted for a pre-existing debt in the absence of a special agreement are regarded simply as conditional payments or collateral security.

Argued Oct. 9, 1895. Appeal, No. 172, Oct. T., 1895, by Charles C. McLain, administrator, from order of C. P. Westmoreland Co., Nov. T., 1885, No. 60, sustaining exceptions to auditor's report. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Exceptions to auditor's report in a contest between two judgment creditors of defendant.

The facts appear by the opinion of the court, DOTY, J., which was as follows:

An auditor was appointed on January 5, 1886, " to hear the parties and their proofs, and report the facts, with his opinion." The auditor made report, which was referred back December 28, 1888, " to find the facts." The report finding the facts was not filed in court until January 2, 1894, or about eight years after the appointment. There has been no undue haste about this case thus far.

About twenty exceptions have been filed to the report. It will not be necessary, however, to consider all these exceptions, as the matter seems to be controlled by one or two well-settled principles. The following facts are pertinent:

1. The judgment of J. S. McCartney, in trust for the Taren-

tum Bank, v. A. V. Kipp, was entered August 6, 1875, in the common pleas of this county.

2. This judgment was assigned to Charles Lockhart on May 21, 1879. The judgment was revived at No. 87, August term, 1880, and to No. 921, May term, 1885.

3. The judgment of Charles C. McLain v. A. V. Kipp et al. was entered in this court June 3, 1876. On November 16, 1885, the administrator of plaintiff was substituted on the record.

4. Fi. fa. was issued September 21, 1885, on the McCartney judgment, and by virtue thereof certain real estate of defendant was taken in execution and sold by the sheriff November 14, 1885.

5. The purchaser was Charles Lockhart, the use plaintiff in said judgment. The price was $6,450. The sheriff made special return that "it appearing from the record that the said Charles Lockhart, as a lien creditor, is entitled to receive the sum of $5,954, I have taken his receipt for that amount, and the balance of said purchase money I have ready as commanded."

6. The attorneys for the McLain judgment filed exceptions to the special return. The allegation was that the sheriff erred in taking the receipt of the purchaser for $5,954.45, "for the reason that said judgment, according to the information and belief of exceptants, has been fully paid."

7. The auditor awarded the fund to the McLain judgment.

The contest is therefore between two judgment creditors of A. V. Kipp. The fund is insufficient to pay both. There is no allegation of collusion on either side. The defendant was undoubtedly indebted on both obligations. The judgments were given for full and valuable considerations. The McCartney judgment is the first lien. It was entered August 6, 1875, while the other judgment did not become a lien until June 3, 1876. As the record stands, the money was properly appropriated to the McCartney judgment. The exception alleges, however, that the judgment was fully paid. Thus a distinct issue is raised. The burden is clearly upon the exceptant. He affirms that the judgment is paid. Whether this is the fact is to be determined only from the evidence which has been introduced. Before examining the evidence it is necessary to pass upon the competency of some of the witnesses. The

learned auditor excluded the testimony of A. V. Kipp and Charles Lockhart, so far as they testified to matters occurring in the lifetime of C. C. McLain. If we get the facts clearly in mind it will not be so difficult to apply the principles of law.

The contest is for the fund arising from the sale of the real estate of A. V. Kipp. The contest is between two judgment creditors of the defendant. The one creditor, C. C. McLain, is dead. His administrator was substituted of record · before the exceptions were filed to the special return. The other cred-, itor, Charles Lockhart, is the assignee of the McCartney judgment. The real contest, therefore, is between the administrator of C. C. McLain, the plaintiff, in one judgment, and Charles Lockhart, the use plaintiff, in the other judgment.

We think the auditor erred in excluding the testimony of Kipp. He had. no interest in the result of the proceeding. The whole question was between the two judgment creditors. Even before the act of 1869, the defendant in an execution was a competent witness in a contest between judgment creditors over a distribution of the proceeds of a sheriff's sale of his property : Smith v. Wagenseller, 21 Pa. 491. The act of 1869, as held in numerous .cases, disqualified no one who was competent as a witness before its passage.

The averment is that the first lien judgment was fully paid. How is this fact in the light of the evidence ? After a careful examination of the evidence, we fail to find any statement that will lead to the conclusion that the judgment was in fact paid. There is no evidence tending to show that it was paid by the defendant, Kipp. For the exceptant three witnesses are called, viz : Dr. J. S. McCartney, Robert Mitchell and John F. Humes. Dr. McCartney testifies : " Lockhart paid me the first money on account of this judgment, February 8th, 1876. Paid by note · for $5,000. . . . He paid balance 22d May, 1879. I, at that time, assigned balance of judgment to him by power of attorney. . . . Mr. Kipp, not to my knowledge, ever paid our bank any part of the $7,737 judgment." It is true, this witness makes inconsistent, if not contradictory, statements. His testimony is thus weakened, if not destroyed. He is a witness called by exceptant, and it will not do to simply cull out the statements of the.witness which are favorable to the party calling him, and exclude the other parts of his testimony. On the

question of payment, there is little testimony besides. The witness, Mitchell, testifies simply to a declaration of one Ellis, " who was a director in the First National." McCartney testifies that Ellis was not a director, but taking the declaration for what it is worth, and as coming from one in authority to speak, it does not show payment, nor, as we view it, tend to show payment. The declarations were that the " bank had gotten its money," and an alleged declaration of McCartney, " that the bank had gotten all their money from Kipp and had not lost a dollar by him."

No statement was made as to how the bank had gotten the money. Such statement is not inconsistent with the contention of Lockhart and it fails to show payment.

The third witness, Humes, " knew nothing about the indebtedness except as he (I) learned it from the president of the bank."

Without regard to the testimony of Kipp, the exceptant, upon whom is the burden, has failed to show that the judgment is fully paid, nor does the auditor find as a fact that the judgment was paid. The weight of the evidence clearly shows that it was not paid by the defendant, Kipp. The exceptant therefore clearly fails to establish the fact of payment.

Nor is there any allegation of collusion between Kipp and the plaintiff in the McCartney judgment. At least no such averment was made in the exceptions, nor any such ground urged at any stage of the proceedings. It is alleged, however, that the debt covered by the first judgment was extinguished by novation. This is not the ground originally laid in the exceptions to the special return ; but how is the fact? Novation is a substitution of a new debt for an old one, or of a new debtor instead of a former one. It is recognized in the law as a mode for the extinguishment of a debt. It must clearly appear, however, that a substitution was in fact intended; and that where another person becomes a debtor, instead of a former debtor, that he was so accepted by the creditor, who thereupon discharged the first debtor. In other words, it must be shown that the parties in interest assented to the extinguishment of the old debt.

The allegation is that the debt was extinguished by novation. The particular facts averred to establish a novation we shall

refer to presently. Novation is not to be presumed. It must be established by evidence. The burden, too, is upon the exceptant to establish what he alleges in this regard. In the absence of proof of a special agreement, the mere acceptance of the security of a third person is deemed a conditional payment, or the receipt of collateral security : Hunter v. Moul, 98 Pa. 13 ; League v. Waring, 85 Pa. 244.

The acceptance of a new security for an existing debt does not operate as a payment unless so intended by the parties : Appeal of Kremmerer, 102 Pa. 558.

To the same effect is Weakly v. Bell et al., 9 Watts, 280, in which case the authorities are reviewed.

In what does the alleged novation consist? Kipp was indebted to the National Bank of Tarentum in the sum of $17,737. This indebtedness was secured by a mortgage of $10,000 on land in Armstrong county and by the McCartney judgment, in this county, in the sum of $7,737. The capital of the bank was only $50,000, and under the national banking act it was not permitted to loan so much to one individual. After notice from the bank 'examiner, the following securities were received by the bank, viz :

Note of John Munhall & Co., dated Feb. 8,
    1876, at four months, for .  .  .  .  $5,000  00
Note, May 1, 1876, at sixty days, for  .  5,000  00
"   "   "   "   "   "  .  .  4,000  00
"   "   "   "   "   "  .  3,737  00

       Or, a total of  .  .  .  .  $17,737  00

On all these notes Kipp was either maker or indorser. In this connection the learned auditor says : " On May 1, 1876, the change in security is consummated ; Kipp, the defendant in said judgment, on February 8 and on May 1, 1876, presumptively, at the request of the bank, presented commercial paper, of which he was the owner, and negotiated, or, in other words, sold the same to the bank, the consideration therefor being the indebtedness secured by the Armstrong county mortgage, and the above judgment in this county, and the discounting of the said paper in the regular way and accepting of same by the bank was, so far as the bank was concerned, an extinguishment

of the old debt. A clear novation; the old security was in violation of law and it was supplied by another." But it does not follow that the acceptance of the new paper was an extinguishment of the old debt. The authorities already cited hold the very reverse. New paper of the debtor and paper of third persons accepted for a pre-existing debt, in the absence of a special agreement, are regarded simply as conditional payment or collateral security. There can be no novation unless it was the intention of the parties to substitute the new security for the old and thereby extinguish the old debt.

The evidence, direct as well as circumstantial, goes to show that there was no agreement for the extinguishment of the judgment in Westmoreland county. Kipp never paid any part of the judgment. His own testimony is to this effect and it is uncontradicted; Lockhart, the use plaintiff, paid $2,500 on June 7, 1876, and the like sum of $2,500 September 11, 1876; the judgment was never satisfied, but on the other hand was twice revived by amicable confession of judgment. From the time of the acceptance of the securities until the sale by the sheriff there was nothing done by either the plaintiff or the defendant in the judgment to indicate an intention on their part to extinguish the old debt. Nor do we discover evidence of any special agreement looking in that direction. No party to the arrangement testifies that any such contract was made. The books of the bank and the testimony of Humes, the cashier, show the acceptance of the securities, but fail to show that the judgment was to be satisfied and the old debt extinguished. Nor is there any other testimony which tends to show an intention of the parties to surrender and extinguish the old debt at the time of the acceptance of the new securities. On the other hand, there is evidence to show the purchase of the judgment by Lockhart.

The indebtedness of Kipp was originally to the Tarentum bank, which was converted into the First National Bank of Tarentum, and by such conversion the assets and business of the old bank passed to the new institution. We have already noticed the fact that the indebtedness of Kipp exceeded the credit which the National Bank was permitted to extend to any one individual. Kipp, however, was not in a position to complain of this. The securities which he had given were not

therefore invalid.   In Winton v. Little, 94 Pa. 64, the doctrine was laid down : " That real estate security taken by a national bank for present or future advances is valid."   In Stevens v. Monongahela National Bank, 88 Pa. 157, it is pointed out that any violation of section 5200 of the Revised Statutes can only be determined by suit brought by the comptroller of the currency in the proper court of the United States.

It is important to keep in mind that this is a contest between two judgment creditors, and to remember that judgment creditors have no higher equity than the debtor himself.   They are bound by the act of the debtor.   As was said by GIBSON, C. J., in Cover v. Black, 1 Barr, 493, a judgment creditor " stands on the foot of his debtor."   It is plain that the debtor has no equity here, nor does he claim any.   The debt was not extinguished as to him until he paid the debt, and there is no evidence to show that he paid any part of the debt embraced in the Westmoreland judgment.   The learned auditor relied on the case of Moorhead v. Duncan, 1 Norris, 488.   But in Shrewsbury Saving Institution's Appeal, 94 Pa. 309, it is made plain that that and similar cases have no application.   There is nothing to show that the subsequent judgment creditor has any equity other than the debtor would have.   He was not misled, so far as the evidence goes, in any way before the indebtedness was incurred.

Mitchell v. Coombs, 96 Pa. 430; Anderson v. Neff, 11 S. & R. 208, and Peirce v. Black, 105 Pa. 342, are also cited to sustain the auditor.   These cases undoubtedly establish that a mortgage or judgment once paid cannot be kept alive as against subsequent lien creditors.   But the cases do not apply to the facts of this case.   The McCartney judgment, which was the first lien, was never paid by the defendant.   Nor was it extinguished by novation, for the reasons already pointed out.   The learned auditor erred in his deductions from the evidence. There is no conflict in the testimony as to the fact of payment or as to the question of novation.

Exception was also filed to the special return to the allowance of the attorney's commission.   But according to the view adopted, the exceptant was not prejudiced by such allowance and is not in a condition to complain.   If disallowed the fund would be awarded to the judgment which is the first lien.

And now, April 15, 1895, for the reasons above given the exceptions to the special return are dismissed, at the cost of the exceptant, and the special return is now confirmed absolutely.

*Errors assigned* were in sustaining exceptions to auditor's report.

*James S. Moorhead, John B. Head* with him, for appellant.— Our first and our main proposition throughout this controversy is that the notes Nos. 1961 and 1962, for $4,000 and $3,737, respectively, were given in the place of the judgment, originally entered in the common pleas at No. 744, August term, 1875, for the real debt of $7,737, and as they were paid by defendant, and not by Charles Lockhart, who had nothing whatever to do with them, the judgment which secured them was also paid : Anderson v. Neff, 11 S. & R. 223; Craft v. Webster, 4 Rawle, 255 ; Mitchell v. Coombs, 96 Pa. 430.

Novation or the acceptance of one security in payment of another, or a new debtor for an old one, is not to be presumed. It must be established by evidence. It is a question of intention.

The bank went through the form of observing the law, and yet it will be said that it did not intend to be really obedient to its requirements. If novation is a question of intention, what was the intention at that time ? Undoubtedly to observe the law. It was the only answer the government would tolerate. Having said so, then is it not estopped, at present, from coming in to assert its turpitude and its own dishonesty ?

*John F. Wentling, David A. Miller* with him, for appellee.— Kipp's testimony was competent: Smith v. Wagenseller, 21 Pa. 491 ; Ferree v. Thompson, 52 Pa. 353 ; Sheetz v. Hanbest, 81 Pa. 100 ; Packer v. Noble, 103 Pa. 188.

There is no evidence in this case of a novation ; a novation can never be presumed. It must be expressly shown, and the assent of all the parties interested must be had to the extinguishment of the old debt, which must appear. It is incumbent on the parties claiming for the McLain judgment to show this, and no attempt has been made to do so. On the contrary the evidence and acts of all the parties show an absolute purpose

to maintain the Lockhart judgment in full life even to this date: Weakley v. Bell, 9 Watts, 273; Shrewsbury Savings Institution's Appeal, 94 Pa. 309; Moorhead v. Duncan, 82 Pa. 312.

We further contend that the auditor's finding can have no weight with the court.    It is a finding contrary to the evidence and a mere deduction from imaginary facts and testimony: Phillips' App., 68 Pa. 130; Miller's App., 102 Pa. 544; Jacob's App., 107 Pa. 137.

PER CURIAM, November 4, 1895:

Our examination of the record has disclosed no substantial error in the decree from which this appeal was taken.    The questions presented have been so fully considered and so satisfactorily disposed of by the learned president of the common pleas that further discussion of either of them is unnecessary.

The decree is affirmed on his opinion.

Decree affirmed and appeal dismissed, with costs to be paid by the administrator of Charles C. McLain, appellant.