## Weir et al. *v.* Potter Title and Mortgage Guarantee Co., Appellant, et al.

Argued May 26, 1936. Before KEPHART, C. J., MAXEY, LINN, STERN and BARNES, JJ.

*James R. Orr,* with him *Howard Zacharias,* for appellant.

*John B. Nicklas, Jr.,* of *McCrady, McClure, Nicklas & Hirschfield,* for appellees.

OPINION BY MR. JUSTICE MAXEY, June 26, 1936:

Plaintiffs filed a bill in equity asking to have the judgment on their mechanic's lien against the premises of I. G. Ivory in Glen Osborne Borough, Allegheny County, declared prior in lien to two mortgage liens assigned by Fidelity Trust Co., and Ohio Valley Trust Co., respectively, to the defendant, Potter Title and Mortgage Co.

On or about April 15, 1929, plaintiffs began the construction of a dwelling house for I. G. Ivory. There were then on record against Mrs. Ivory's land or parts of it, the following two mortgages made by Mrs. Ivory and her husband: (1) mortgage to Fidelity Trust Co., dated

October 1, 1928, in the sum of $6,000, recorded on the same day. This mortgage covered only a strip of the premises later completely covered by the $25,000 mortgage to the Union Trust Co. (2) Mortgage to Ohio Valley Trust Co., dated March 13, 1929, in the sum of $13,000, recorded on the same day. These are hereinafter referred to as "the two mortgages."

On October 28, 1929, Mrs. Ivory made written application to the Union Trust Co. of Pittsburgh, hereinafter referred to as the Trust Company, for a loan of $25,000, to be secured by a first mortgage on her property. The application was favorably acted upon and the Trust Company requested the Potter Title & Trust Co., hereinafter referred to as the Title Company, to insure the title to the property which had been offered as security for the loan. The Title Company found the land to be subject to the two mortgages and the mechanic's lien above mentioned.

When the question of taking care of the mechanic's lien came up in the course of the mortgage settlement, Mrs. Ivory's husband, an attorney, informed the Title Company's representative that his wife had a defense to plaintiffs' mechanic's lien and he requested that the two mortgages, whose liens were prior to the mechanic's lien, should be assigned to the Title Company to protect it for insuring the Trust Company that the land and building covered by the Trust Company's mortgage was not subject to a mechanic's lien. The Trust Company was not represented at this meeting and had no knowledge at that time of the proposed arrangement.

Before the Trust Company delivered its check for $25,000, drawn to the order of Robert B. Ivory and Irene G. Ivory, Mr. Craig, the title officer of the Title Company (according to his testimony) informed the Trust Company's officer, Mr. Corey, of the intention of the Title Company to have the two prior mortgages assigned to the Title Company as security against any mechanic's liens on the property and that an indemnity bond was

also to be furnished by Irene G. Ivory to cover any possible balance. Craig said that Corey replied, "he thought that would be all right, to go ahead, if it was satisfactory to the Title Company, it would be satisfactory to the Trust Company." Mr. Corey testified that he had no knowledge of the two prior mortgages until after their assignment to the defendant. When asked on cross-examination if Mr. Craig had not told him there was a mechanic's lien to be protected against and "that they intended to take over the assignment of these mortgages for the purpose of protecting the lien," Mr. Corey testified that he "could not recall it." He was then asked: "Would you say Mr. Craig did not call you about it." He replied, "I couldn't say that either."

On November 19, 1929, the Trust Company sent its check for $25,000, payable to Mr. & Mrs. Ivory, accompanied by its letter stating: "This building being new, provision should be made for protection against mechanics' liens." The check was then endorsed by the payees to the Title Company for settlement. The latter company then paid the Fidelity Trust Co., $6,230.90, and the Ohio Valley Trust Co., $13,280, and took assignments of the two mortgages and the bonds accompanying them. After deducting its charges for title fees and expenses and its charge for insurance against mechanics' liens, the Title Company on December 29, 1929, upon delivery to it of the bond of Standard Accident Insurance Co., indemnifying the Title Company against loss from mechanic's liens, paid to R. B. Ivory the balance, $5,230.03, of the proceeds of the $25,000 loan.

On April 4, 1930, plaintiffs filed a mechanic's lien for $10,610.09 against the land and buildings covered by the Trust Company's mortgage of $25,000. Mrs. Ivory and her husband filed a defense to this mechanic's lien. After trial, plaintiffs recovered a judgment for $4,943.27.

On May 13, 1930, after plaintiffs filed their mechanic's lien, the Title Company voluntarily took over the mortgage from the Trust Company for $25,000 and defendant

paid the Trust Company $25,729.17 and took an assignment of the mortgage and bond. On February 8, 1933, all three mortgages being in default, defendant issued execution on the $6,000 and the $13,000 mortgages, respectively, and on the same day writs of fieri facias were issued to sell the real estate. On March 3, 1933, plaintiffs filed their bill to enjoin the defendant and the sheriff from proceeding with the executions and for a decree that the judgment on their mechanic's lien be declared prior in lien to the liens of the two mortgages on which execution had been issued.

On July 16, 1935, the court filed an adjudication consisting of 41 findings of fact and one conclusion of law and entered a decree nisi. There was no discussion of the questions of fact and law involved. The decree nisi ordered the liens of "the two mortgages" postponed as to the mechanic's lien of plaintiff and that any proceeds from the sheriff's sale of the property in question be distributed, first, to the satisfaction of the mechanic's lien. Exceptions to the findings of fact and conclusions of law and decree nisi were filed. These were dismissed on November 17, 1935, after a minor revision of two findings of fact. Accompanying the order of dismissal was a brief opinion which did not, however, discuss the questions of law involved and made only slight reference to the questions of fact involved. An appeal was then taken to this court. This court upon discovering that the record did not contain any substantial discussion by the court below of the questions of fact and law involved, remitted the record for an opinion in accordance with Equity Rules 13 and 67.*

---

* The members of this court have each noted that the judge of the court below in his Supplemental Adjudication has seen fit not only to refer to the fact that when this appeal was first presented to this court it was sent back for an opinion, but to do so in the following language: "From this Decree appeal was taken to the Supreme Court and the record remanded because of the Court's belief that the technical niceties of Rule 67 of that Court had not

In the adjudication of the court below it was found as facts that the Trust Company had no knowledge of any prior encumbrances and no knowledge of the assignment of the two mortgages to the Title Company, that the assignment of these two mortgages was "at the instigation of Robert B. Ivory, acting as agent for Irene Ivory," that the sums totaling $19,510.97 paid by check of the Trust Company to the respective holders of the two mortgages was the property of Irene and Robert B. Ivory, that the balance of $5,230.03 retained by the Title

---

been fully or completely complied with in the adjudication of the Court below."

Equity Rule 13 of this court reads as follows: "When the court dismisses a bill, enters a decree in favor of either party, refuses to change a decree or dismissal, or transfers a case to the law side of the court, it shall file a statement of the reasons for its action, unless they already appear of record."

Equity Rule 67 of this court reads as follows: "After a hearing upon bill and answer, and also after the close of a trial upon the issues raised by the pleadings, the parties may file with the chancellor requests for findings of fact and conclusions of law, within such time as he shall allow for the purpose. These requests may be treated by him merely as suggestions; they shall be filed by him with his adjudication, but shall not be printed on appeal. The adjudication shall consist of (1) a statement of the pleadings, specifically setting forth the issues raised thereby; (2) the findings of fact in paragraphs consecutively numbered; (3) a discussion of the questions of fact and law involved; (4) the conclusions of law in paragraphs consecutively numbered, and (5) such a decree nisi as in the opinion of the chancellor should be entered as the final decree. His adjudication, as thus prepared, shall be filed by him and become part of the record of the case."

These rules are mandatory; compliance with them serves an essential purpose in the administration of justice, and for one who has ignored them to dismiss them as mere "technical niceties" is simply an indulgence by him in a self-serving euphemism. The rules of this court have all been carefully thought out; they are the fruits of the experience of a long line of Supreme Court Justices and they have met with such nearly universal respect from bench and bar that such a cavalier reference to them as the one above quoted is so uncommon as to invite the attention it has received.

Company was the property of Irene & Robert B. Ivory, that the Title Company was not the agent of the Trust Company in the payment of these mortgages, and retention of the balance, that the Title Company was not the agent of the Trust Company in accepting assignments of the two mortgages referred to, that the two mortgages were transferred to the Title Company for the purpose of defeating the mechanic's lien claimants, the plaintiffs in the instant case, and that these assignments constituted a fraud upon junior lien creditors. The court concluded in law that the assignments of the two fully paid-up mortgages, to the Title Company, were "fraudulent in intent and purpose" and the liens of the mortgages thus assigned must be postponed as to the lien of the plaintiffs by reason of the judgment entered on the mechanic's lien.

In *Cruzan v. Cruzan*, 243 Pa. 165, 89 A. 876, this court said: "Nothing but clear error will warrant the setting aside of findings of fact by a chancellor. What was said in the recent case of *Eppsteiner v. Isman*, 239 Pa. 393 [86 A. 878]: 'The findings of fact by a judge, which involve the credibility of witnesses and the weight to be given their testimony, will be given the effect of a verdict of a jury and they will not be disturbed where there is testimony to support them' was a repetition of what before had been repeatedly said on the same subject." In the instant case there was testimony to support the findings of fact of the chancellor and we find no reason for disturbing them or the decree entered pursuant to his findings.

There is no room for differences of conclusions as to the true nature of the transaction giving rise to this case. As is set forth in appellant's "History of the Case," "Irene G. Ivory made written application to the Union Trust Company of Pittsburgh for a first mortgage for $25,000 on said land and the building constructed for her by plaintiff partnership. The loan was accepted by the Union Trust Company." As far as the latter com-

pany was concerned, the transaction was a straight loan of $25,000 to Mrs. Ivory upon a first mortgage on her property, which the Title Company insured to be a first mortgage. It is obvious that there was no suggestion made by the Union Trust Company that it or anyone in its behalf should take an assignment of the outstanding liens against this property. The clear implication was that when this $25,000 was loaned to the owner of the property, all encumbrances against it would be paid off so that the Trust Company's loan would be secured by a first mortgage. As a matter of fact when the Title Company found that the property was subject to the liens of two mortgages for $13,000 and $6,000, respectively, and also subject to the mechanic's lien claim, it used part of this sum of $25,000 to pay the debts secured by the two mortgages but instead of satisfying the liens of these mortgages, it took an assignment to itself of them, as some security for itself as the insurer of the title. The question then arises: What was the rights of the holder of the mechanic's lien after the *debts* secured by the mortgages *were paid* but the mortgages themselves were not satisfied?

This court in *Craft, for the use of Powell, v. Webster,* 4 Rawle 241, at 255, said: "A mortgage, in Pennsylvania, is literally and legally now understood to be but a bare security for the payment of the money, or performance of other acts therein mentioned; and at most only a chose in action. . . . The debt being everything, and the mortgage barely a security for the payment of it, it follows of necessity that whatever affects the debt will produce a corresponding effect upon the mortgage. If the debt be extinguished by any means, the mortgage will thereby become so likewise. A parol forgiving of the debt accompanied by a delivery of the securities to the debtor or mortgagor, will be sufficient to extinguish the mortgage: *Richards v. Syms,* 2 Eq. Cas. Abr. 617, Pl. 2; s. c., Barnard, 90; Atk. 319; Con. 225." In *Peirce v. Black,* 105 Pa. 342, this court held: "It is un-

doubtedly true that as against subsequent lien creditors a mortgage or judgment once paid cannot be kept alive: *Anderson v. Neff,* 11 S. & R. 208; *Craft v. Webster* [supra]. So where a mortgage is given to secure future advances, the agreement to advance must appear on the face of the instrument." In *Loverin, Hall & Co., to use, v. Humboldt Safe Dep. & Tr. Co., to use,* 113 Pa. 6, 4 A. 191, this court, in an opinion by Mr. Justice PAXSON, said: "This is a very plain case. To state it briefly, it was an attempt to keep alive a mortgage which had been paid by the mortgagors, against a subsequent unpaid mortgage given by the same mortgagors upon the same premises. . . . It is doubtless true that the mortgagors did not intend to have this mortgage satisfied. They may and probably did intend to keep it alive for the benefit of themselves or their children. . . . Where creditors are not concerned, there is perhaps no legal reason why it may not be done. Though actual payment discharges a judgment or other encumbrance at law, it does not discharge it in equity if there are interests which require it to be kept alive for their protection. . . . This results from the right which every man has to do what he will with his own. The rule is different when he comes to deal with the property of other persons. The rights of the second mortgagees are concerned here. When the mortgagors procured the payment of the first mortgage with what was admittedly their own money, it extinguished that mortgage at law and in equity as between it and the second mortgage, and the latter took its place. We do not deny the right of the mortgagors to have procured some friend to have bought the mortgage and taken an assignment of it. Such a transaction would have been legal and would have kept it alive. But when they procured it to be done with their own money, the assignment of the mortgage is of no validity as against the younger mortgage. This principle is too familiar to need the citation of authority." In *Fair and Square B. & L. Assn. v. Presbyterian Board*

*of Publication, etc.,* 302 Pa. 162, 153 A. 341, this court, speaking through Mr. Chief Justice FRAZER, said: "We do not question the rule that a junior encumbrancer may take advantage of a total or part payment of a previous encumbrance, and that it is not permissible for the debtor to defeat this rule by an attempt to keep alive for his own purpose encumbrances which are actually paid."

The business of the defendant company is that of insuring titles. In order to protect itself the defendant took the bond of the Standard Accident Insurance Company, indemnifying it against mechanics' liens and it took assignments of two mortgages, prior to the new mortgage of $25,000, which two prior mortgages had *in fact been paid off* by the money loaned to Mrs. Ivory by the Trust Company. The Title Company did not buy these mortgages and take an assignment of them. Such a theory is pure fiction. When the debts secured by these two mortgages were in fact paid, these two mortgages became, as to the plaintiffs, mere "scraps of paper" which constituted no substantial legal barrier between those plaintiffs and the property against which their mechanic's claim was a lien. The right of junior lien creditors to advance in legal status in respect to a property to which their lien is attached, when senior lien creditors have been paid, whether the encumbrances securing the latter's debt have been formally marked satisfied or not, is firmly imbedded in our law. The hold which a lien to secure the payment of a debt has on a property must be released in favor of a junior lien holder when the debt secured by the former has been liquidated. It is the debt which gives the lien its life. The debts secured by the liens of the two mortgages having been paid, as the chancellor found upon sufficient evidence, the debt due plaintiff and secured by their mechanic's lien takes priority.

Appellant in his paper book cites the following from 41 C. J., page 787: "A mortgage may be kept alive to

secure an indebtedness distinct from that which it was originally made to secure. This rule applies also to one who advances to the mortgagor the money necessary to pay the mortgage debt under an agreement that he shall have the benefit of the mortgage security for his own reimbursement." The inapplicability of this quotation to the case at bar is too manifest to require comment. Defendant does not have the status of one who advanced to the mortgagors the money to pay the debts. If it had done so and taken an assignment of the two mortgages, its position of being superior to that of the plaintiffs would be incontestable.

Appellant also cites the following from 60 C. J., page 786: "A person who, not being a volunteer but having interest in property, pays off an encumbrance on the property in order to protect his interest, is entitled to be subrogated to the rights and remedies of the person paid." Defendant did not, of course, pay off the encumbrances on this property in order to protect its interest, and there is no doctrine of subrogation involved in this case.

Appellant also quotes at length from *Moore v. Harrisburg Bank,* 8 Watts 138. That was a case in which it was held that a mortgage does not necessarily merge or become extinct, by being united in the same person with the fee; but, on the contrary, when it was the intention of the parties that it should not merge, but continue to subsist for the protection of the owner of the fee from subsequent encumbrances, he may keep it on foot, sue out a scire facias upon it in the name of the mortgagee against the mortgagor, with notice to himself, obtain a judgment and sell the estate mortgaged.

The above principle has been frequently recognized by our courts. For example, it was held in *Moats v. Thompson,* 283 Pa. 313, 129 A. 105, "A merger will never take place where it is against the interest of the mortgagee or when it is to his advantage to keep it alive."

The difference between the right of an owner who buys a mortgage constituting a prior lien on his property and who manifests an intention that it should continue to exist for his protection, and the right of a junior encumbrancer to have the status of his lien advanced when a debt secured by a senior encumbrance is fully paid, is noted by the Superior Court in *Marshall v. Klein*, 96 Pa. Superior Ct. 580, where that court, in an opinion by Judge BALDRIGE, said: "When a mortgage has been paid by the mortgagor, the mortgage is extinguished: *Kinley v. Hill*, 4 W. & S. 426, and cannot be kept alive as against subsequent lien creditors: *McCartney v. Kipp*, 171 Pa. 644 [33 A. 233]; 27 Cyc. 1396. There is no question that a mortgage does not necessarily merge or become extinct by being united in the same person who owns the fee provided it is the intention of the parties that it should not merge but continue to exist for the protection of the owner of the fee: *Moore v. Harrisburg Bank*, 8 Watts 138; *Moats v. Thompson*, 283 Pa. 313."

The instant case presents no example of a merger by the purchase, by the owner of a fee, of an outstanding first mortgage. No one contends that the owner of the fee involved here bought and took an assignment of "the two mortgages." She borrowed $25,000 on a pledge to give the lender a first mortgage for that sum. The debts secured by "the two mortgages" were paid with the money so loaned. When these debts were paid, "the two mortgages" which secured them ceased to exist as legal barriers between a junior encumbrance and that property. By no device recognized in the law can the company which for a consideration insured the title, resurrect those two mortgages to serve pro tanto as a security for the hazard it assumed. The Title Company in taking these assignments acted on its own initiative and to serve its own purpose.

Decree affirmed at appellant's cost.