# Farmers National Bank of Pennsburg *v.* Kern (et al., Appellant).

Argued December 14, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Franklin H. Spitzer,* with him *Wolf, Block, Schorr and Solis-Cohen,* for appellant.

*Harry N. Moran, Jr.,* with him *J. B. Hillegass,* and *Hillegass & Moran,* for appellee.

OPINION BY WRIGHT, J., March 22, 1961:

We are here concerned with a dispute over the distribution of the proceeds of a sheriff's sale of real estate on a writ of fieri facias. The sheriff's schedule of distribution, after providing for costs and taxes, called for payment of the entire balance to the Farmers National Bank of Pennsburg, hereinafter referred to as Farmers, on whose judgment the writ had issued. Exceptions were filed by the Commonwealth Land Title Insurance Company, hereinafter referred to as Commonwealth, on the ground that its lien, although subsequent on the record, should be prior in distribution to a portion of the judgment of Farmers. On July 14, 1960, the court below, one judge dissenting, dismissed the exceptions. Commonwealth has appealed. The facts are not in dispute, and are set forth in the adjudication of Judge FORREST as follows:

"1. Defendants, Norman Kern and Edythe Kern, formerly owned certain premises on Hendricks Road, Kratz Station, Lower Frederick Township, Montgomery County, Pennsylvania.

"2. On June 10, 1953, defendants executed and delivered a mortgage upon said premises in favor of Olney Federal Savings and Loan Association in the sum of $5,000. The mortgage was duly recorded on June 10, 1953 in the office of the Recorder of Deeds of Montgomery County, Pennsylvania in Mortgage Book 2451 page 559.

"3. On January 20, 1956, defendants borrowed $3,-500 from the plaintiff, Farmers National Bank of Pennsburg and established a line of credit with the Bank, with a $20,000 limit. They executed and delivered a judgment note of $20,000 as collateral for the loan and line of credit. The loan was increased and reduced on several occasions in 1956. The outstanding balance in August, 1956 was $20,000. On September 14, 1956, the plaintiff recorded the judgment note

in Judgment Docket B-7, page 325, which judgment became a lien on the defendants' property.

"4. On February 27, 1957 defendants purchased certain real estate in Upper Salford Township, this County.

"5. On May 7, 1957 defendants sold and conveyed their said property situate in Lower Frederick Township. Relying on an incorrect affidavit of Mr. and Mrs. Kern that there were no liens against the property except that of Farmers National Bank of Pennsburg and certain others not here relevant, the exceptant Commonwealth Land Title Insurance Company issued a policy insuring the purchaser of the property that his title was free of liens. The plaintiff agreed to and did execute and deliver a release of the lien of its judgment in exchange for the entire net proceeds of the sale or $10,017.80. This sum was received by the plaintiff on May 9, 1957 and credited the loan so that balance of the loan was reduced to $8,982.20.

"6. On May 7, 1957 the plaintiff caused its judgment to be revived in the principal sum of $20,000.00 with interest from April 22, 1957. The judgment as revived thus became a lien against the defendants' property in Upper Salford Township.

"7. By error or mistake of Commonwealth Land Title Insurance Company, the mortgage of Olney Federal Savings and Loan Association was overlooked when the proceeds of the sale of the Lower Frederick Township property were distributed.

"8. On May 27, 1957, the Plaintiff complying with its earlier agreement with the defendants, extended credit in the amount of $10,017.80, thus raising the amount of the loan to $19,000. The defendants made several payments in reduction of the loan, reducing the balance of principal to $16,751.

"9. On June 28, 1957, the title insurance company purchased from the Olney Federal Savings and Loan

Association the mortgage and bond and warrant and received an assignment.

"10. On October 7, 1957, judgment was entered upon the bond accompanying the mortgage to Olney Federal Savings and Loan Association as of September Term, 1957, No. 490, and on October 22, 1957 said judgment was marked to the use of claimant, Commonwealth Land Title Insurance Company.

"11. On September 15, 1958, the plaintiff filed an assessment of damages in the amount of $18,404.26 and on the same day a Fi. Fa. was issued to the above-captioned term and number. The Upper Salford Township property was sold by the Sheriff on the Fi. Fa. on October 29, 1958 and the Sheriff's schedule of distribution shows, after payment of costs and taxes the entire balance of $13,156.62 payable to the plaintiff on the writ".

The three contentions of Commonwealth on this appeal, as set forth in its brief, may be consolidated and stated as follows: Since the judgment of Farmers was confessed upon a note which was not specifically conditioned to secure future advances, Farmers could not, after receiving payment on account of the original obligation, advance additional funds and regard the pre-existing judgment as security therefor to Commonwealth's prejudice. It is argued that agreements for advance money security must be clearly set forth on the record, that an obligation on which a lien is based is reduced pro tanto by payment on account, and that the lien may not be resurrected as security for a later additional obligation.

The record clearly discloses that, as between Farmers and the Kerns, the judgment was regarded as security for a fluctuating amount of credit. Raymond S. Stevenson, President of Farmers, testified that the judgment was entered as a matter of collateral "on

record to secure the advance of funds anticipated . . . And there were re-advances all the time. In other words, it was a revolving line of credit, basing the security of that line from then on with the one-day note". Mr. Stevenson further testified, contrary to Commonwealth's theory, that the payment received by Farmers at the time of the release of its lien as to the property in Lower Frederick Township was not on account of or to be credited on the security judgment, but that the Kerns were to retain the proceeds of that sale "by a re-advance of credit from us". In our opinion, the controlling circumstance is that this re-advance of credit by Farmers was made before Commonwealth's lien was entered of record.

The rights of lien creditors are generally to be determined by their status as shown by the record at the time of the judicial sale: *Natoli Appeal,* 186 Pa. Superior Ct. 81, 140 A. 2d 458. It is true that obligations conditioned for present and future debt will not be preferred as to advancements made after the entry of subsequent liens: *Ter-Hoven v. Kerns,* 2 Pa. 96; *The Bank of Montgomery County's Appeal,* 36 Pa. 170; *Kerr's Appeal,* 92 Pa. 236. However, as already indicated, the obligation of Commonwealth in the instant case was not entered of record at the time the additional funds were advanced by Farmers. The lien of Commonwealth did not intervene between Farmers' original judgment and its later advance, but is subsequent and junior to that advance. It is competent for parties to a judgment, by their own agreement, to change the purposes for which it may be held: *Peirce v. Black,* 105 Pa. 342. Instead of entering a new judgment at the time of the subsequent advance, which would concededly have been entitled to priority, Farmers was justified in treating the original judgment as sufficient for security purposes "for a judgment though paid in full may by agreement between the parties be kept

alive to secure new loans and advances": *Weaver's Appeal*, 115 Pa. 59.

Commonwealth relies, inter alia, on the case of *Weir v. Potter T. & M. G. Co.*, 323 Pa. 212, 185 A. 630, which presents a different factual situation. There can be no question that the holder of a junior lien already of record may take advantage of the partial or total payment of a prior lien. See *Tesauro v. Calitri*, 153 Pa. Superior Ct. 156, 33 A. 2d 36. On the other hand, although a judgment has been paid in part or even in full, the parties may lawfully agree that it shall not be satisfied of record but shall remain as collateral for a new loan made or to be made, and judgment creditors whose liens accrue subsequently cannot object: *Merchants Nat. Bank v. Mosser*, 161 Pa. 469, 29 A. 1. The following statement in the case last cited clearly rules the present appeal (italics supplied):

". . . The subsequent judgment creditors against whom an agreement of this kind will not operate are *those whose liens were in existence at the time,* and who would be prejudiced thereby. As against such the agreement could not be enforced, because its effect would be to postpone their liens in favor of a subsequently contracted indebtedness of the judgment debtor, and thus disturb acquired rights. *Not so with those who obtain their liens at a later period;* they have no rights to be disturbed, and they can be heard to assail the judgment only as they seek to show a fraudulent purpose therewith, and collusion between the parties thereto.

"The authorities relied upon by the auditor certainly hold that such an agreement as we have here is void as against subsequent creditors; but they are inapplicable, inasmuch as the parties contending for this fund to the exclusion of the bank, though subsequent judgment creditors to the bank, *were not such creditors in existence at the time when the agreement was entered*

*into.* If the expression subsequent creditors, as used in these authorities, is to include all who may at any subsequent period become creditors, of what value is the right, which all the authorities concede to be in the judgment debtor, to continue the lien of the judgment for a purpose other than that originally intended, and how can such judgment be any protection or security to the plaintiff under such agreement".

Commonwealth also cites *Weiskircher v. Volk,* 29 Pa. Superior Ct. 611, and *Marshall v. Klein,* 96 Pa. Superior Ct. 580, but these cases do not support its contention. In the *Weiskircher* case, an execution was fraudulently issued in an amount four times the sum actually due. In the instant case, fraud was not alleged, proved, or even inferred. It should perhaps be noted that the *Weiskircher* case recognizes the principle that sums advanced under the first encumbrance before the entry of the second lien are entitled to priority. In the *Marshall* case, a payment on the prior lien was receipted on the record. It was held, and properly so, that the junior lienholder was justified in relying on the record of partial satisfaction. In the instant case, no credit appeared on the record of Farmers' judgment.

In the case of *Slater Supply Co. v. Universal Builders' Supply Co.,* 397 Pa. 533, 155 A. 2d 617, Universal entered judgment, February 2, 1957, on a note given by Coslow-Ferarra in amount of $9,500. On February 13, 1957, Slater entered its judgment against Coslow-Ferarra in amount of $6,961.11. The real estate of the judgment debtor was subsequently sold on an execution issued by Universal. Slater filed exceptions to the sheriff's distributions, alleging that Universal's note represented a debt of only $6000, not $9,500. Universal contended that the note was given as security both for past due accounts and future purchases, and that the actual debt exceeded $9,500. A jury trial on an issue framed by the court resulted in a verdict in favor of

Slater. A motion by Universal for judgment n.o.v. was granted, and Slater appealed. In affirming, our Supreme Court held that Slater's lien could not prevail over the prior lien of Universal in the absence of proof of collusion or other fraud between Universal and Coslow-Ferarra. The following statement in the opinion of the Supreme Court is particularly applicable to the situation in the case at bar: "The contention that the $9,500 note was given only to secure future advances which amounted to $6,000 is one that perhaps the debtor could raise as a defense but it is not available to Slater, a subsequent lien creditor, in the absence of fraudulent collusion. This rule is in accord with the equities of the situation when it is noted that on February 13, 1957 when Slater received its judgment note and confessed judgment the note of Universal in the amount of $9,500 was of public record".

In the case at bar, as previously indicated, Commonwealth does not contend that there was any collusion or fraud. There is no suggestion by Commonwealth that the full amount of $16,751 is not justly due and owing by the Kerns to Farmers. As in the *Slater* case, this appellant was notified of Farmers' lien by the state of the public record at the time it acquired the mortgage and bond on which it subsequently entered judgment. The amount due to Farmers from the Kerns was not increased after Commonwealth purchased its obligation and entered judgment. We are all of the opinion that the lower court acted properly in dismissing Commonwealth's exceptions to the Sheriff's schedule of distribution.

Order affirmed.