**In re Hardy ASSMANN, Gabriela Assmann, Debtors.**

**Bankruptcy No. 81–02189G.**

United States Bankruptcy Court,
E. D. Pennsylvania.

May 11, 1982.

Jack K. Miller, Philadelphia, Pa., for the debtors, Hardy Assmann and Gabriela Assmann.

Emory W. Buck, Lansdale, Pa., for Sentry Consumer Discount Co.

Stanton C. Kelton, III, Wood & Floge, Bensalem, Pa., for AVCO Financial Services.

James J. O'Connell, Philadelphia, Pa., trustee.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge:

The issue presented is which of two creditors, holding mortgages on the debtors' residence, is entitled to priority in the proceeds of the sale of that residence. We conclude that, as between the two creditors, the third mortgagee is entitled to priority over the second mortgagee because it had paid to the second mortgagee the amount due on the second mortgage although that mortgage was never marked satisfied.

The facts of the instant case are as follows:[1] On June 5, 1981, Hardy and Gabriela Assmann ("the debtors") filed a petition for an adjustment of their debts under chapter 13 of the Bankruptcy Code ("the Code"). At that time they were the owners of real estate at 103 Britain Woods Circle, Chalfont, Pennsylvania. At that time Sentry Consumer Discount Company ("Sentry") was the holder of a second mortgage on that property[2] and AVCO Financial Services Consumer Discount Company ("AVCO") was the holder of a third mortgage on that property.[3] On August 4, 1981, the debtors filed an application requesting, inter alia, that Sentry be ordered to mark its mortgage satisfied. AVCO filed a motion to intervene in that action, and we granted that motion. We further entered an order authorizing the sale of the debtors' residence free and clear of all liens; allowing the payment of the expenses of that sale, the tax claims and the first mortgage; and directing that the remainder of the proceeds thereof be held in escrow pending

our decision as to whether Sentry or AVCO is entitled to priority in payment therefrom.[4]

At the hearing held herein, the parties presented evidence about the circumstances surrounding the loan transaction between AVCO and the debtors. From the evidence presented by the debtors and AVCO, they established that the following occurred. In September or October of 1979, the debtors applied to AVCO for a loan. AVCO did a title search of the debtors' residence and discovered the existence of the Sentry mortgage. Because it is AVCO's policy not to accept a third mortgage position, AVCO and the debtors agreed to a consolidation loan. In order to achieve that end, AVCO contacted the manager of Sentry and was given a figure of $4,887.00 as the payoff figure for Sentry's loan to the debtors. Thereafter, AVCO mailed a check made payable to Sentry in the amount of $4,892.00 (which included a $5.00 satisfaction fee). That check was placed in a stamped envelope, addressed to Sentry's business address and delivered to the post office by an AVCO employee. The check contained a legend on the front and back of it which stated that it "Includes Satisfaction of Mtge. # 2253, page 54 . . . ." which was the mortgage held by Sentry on the debtors' property. The front of the check further contained language to the effect that it was in full payment of the debtors' account. Although the check was cashed at Girard Bank, there was no signature on the back of the check except for Gabriela Assmann's which appears beneath a handwritten legend stating "OK to cash for return to customer."

AVCO asserts that the evidence presented establishes that it tendered to Sentry payment in full of the debt owed to Sentry by the debtors and that, therefore, Sentry must mark its mortgage satisfied. Sentry raised two defenses: (1) that it never re-

---

1. This opinion constitutes the findings of fact and conclusions of law, required by Rule 752 of the Rules of Bankruptcy Procedure.

2. Sentry's mortgage was recorded on August 30, 1979, in the amount of $8,428.00.

3. Avco's mortgage was recorded on October 5, 1979, in the amount of $9,999.53.

4. The proceeds of the sale are not enough to pay both AVCO and Sentry.

ceived the check sent to it by AVCO and (2) that, even if it did receive the check, that check was not in full payment of the loan but was only a partial payment. We conclude that the evidence presented at the hearing herein does not support Sentry's position.

With respect to Sentry's first defense, we find that AVCO's evidence establishes that the check, made payable to Sentry, was properly mailed. This raises a presumption that the check was received by the addressee, Sentry. *See, e.g., Paul v. Dwyer*, 410 Pa. 229, 188 A.2d 753 (1963). The only evidence offered by Sentry to rebut that presumption was the testimony of a Sentry employee who is now the custodian of the records of the debtors' account and the ledger sheet for that account which shows a payment of only $1,000.00 toward that account in October, 1979. However, that employee was not in charge of the debtors' account at the time in question[5] and so could not testify that the check was not received at Sentry's office. Furthermore, that employee could not testify (and the ledger sheet did not show) where the $1,000.00 payment came from in October, 1979. We do not find that evidence to be sufficient to rebut the presumption that the check was received by Sentry.[6]

Having found that Sentry did receive the check in question, we must determine whether that check was in full payment of the debt (requiring that the mortgage be satisfied) or whether it was only a partial payment. AVCO's employee testified that she called the manager of Sentry in October of 1979 and was told that the total debt due was $4,887.00 and that it was that sum (plus a satisfaction fee) which was sent to Sentry. In rebuttal, Sentry's employee stated that he had determined that the payoff figure in October, 1979, would have been $5,177.00 instead of $4,887.00. However, on cross-ex-amination, that witness admitted that he had not computed the figure in 1979 but had done so in 1981 by using a chart. He further admitted that, in 1979, the payoff figure could have been computed in several ways.

From the above, we conclude that the evidence presented by Sentry is not enough to convince us that AVCO was not given a payoff figure of $4,887.00 by Sentry's manager in October, 1979. Sentry's witness could not testify as to what figure the Sentry manager gave to the AVCO employee and, therefore, the testimony of that employee stands uncontradicted on that point. Furthermore, the fact that that figure may or may not have been correct[7] is unimportant to the issue before us. Finding, as we do, that a Sentry employee told an AVCO employee in October, 1979, that $4,887.00 was the correct payoff figure, we conclude that Sentry is estopped from now asserting that the payoff figure is different. Under the doctrine of equitable estoppel, a party is estopped from denying the truth of a representation which he made to another, expecting that other party to rely on it, and on which the other party did reasonably rely to its detriment.[8] In the instant case, we find that Sentry did represent to AVCO that the payoff figure was $4,887.00; that Sentry expected AVCO to rely on that representation; and that AVCO did rely on that representation in extending the loan to the debtors and in sending a check for that amount to Sentry. In addition, AVCO's employee testified, and we find, that all of the actions which AVCO took were in accordance with the customary practice of the consumer lending business and were reasonable. Based on all of the above, we conclude that Sentry is estopped from now asserting that the payoff figure was not·$4,887.00.

5. In fact, the employee who testified for Sentry was not even an employee of Sentry in October, 1979.

6. *See, e.g., Berkowitz v. Mayflower Sec. Inc.*, 455 Pa. 531, 317 A.2d 584 (1974).

7. We do not mean to imply that we are convinced by the testimony of Sentry's witness that the $4,887.00 figure was *not* a correct calculation of the total debt due in October, 1979.

8. *See, e.g., Rosen v. Hotel and Restaurant Employees & Bartenders Union*, 637 F.2d 592 (3d Cir. 1981); *Santos v. Franklin*, 493 F.Supp. 847 (E.D.Pa.1980); *Anthony v. Ryder Truck Lines, Inc.*, 466 F.Supp. 1287 (E.D.Pa.1979).

In light of all of the above, we conclude that in October, 1979, AVCO did send to Sentry a check in the full amount of the debt owed to it by the debtors at that time. Consequently, we conclude that Sentry's mortgage should have been marked satisfied at that time.[9] As a result, we conclude that, as between AVCO and Sentry, AVCO is entitled to priority in payment out of the proceeds of the sale of the debtors' residence and we will so direct.

9. *See, e.g., Weir et al. v. Potter Title and Mortgage Guarantee Co.*, 323 Pa. 212, 185 A. 630 (1936).